Donald H. SOUKUP, Respondent,

v.

Edward J. MOLITOR, Appellant.

No. C1–86–1882.

Court of Appeals of Minnesota.

July 14, 1987.

James T. Hynes, Stapleton, Nolan & McCall, St. Paul, for respondent.

William R. Skolnick, Meshbesher, Singer & Spence, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ., without oral argument.

## OPINION

RANDALL, Judge.

In 1985, Donald Soukup initiated an unlawful detainer action against Edward Molitor for failure to make timely rent payments, among other things. The trial court entered judgment in favor of Soukup, and Molitor appealed. While the appeal was pending, the parties entered into a settlement stipulation, and the action was dismissed.

In October 1986, Soukup again initiated an unlawful detainer action against Molitor. On October 31, 1986, the trial court entered summary judgment, granting Soukup a writ of restitution. Molitor appeals the October 31, 1986, judgment. We reverse and remand for trial.

## FACTS

In 1984 appellant Molitor and respondent Soukup entered into an agreement by which Soukup would lease to Molitor a St. Paul office for five years at $250 per month.

In October of 1985, Soukup commenced an unlawful detainer action against respondent. The parties settled the matter by entering into a stipulation for settlement and dismissal. The parties agreed the action should be dismissed without prejudice, and that if future rent payments were not timely made, Soukup could immediately apply for writ of restitution without further court action.

Respondent contends that in a letter dated October 7, 1986, he notified appellant to vacate the premises; that appellant was in violation of the lease for nonpayment of rent; and that appellant had violated the terms of the stipulation. Respondent contends he also mailed a letter to Mr. Pihlaja, appellant's counsel at the previous unlawful detainer action, upon whom the stipulation authorized service. The record contains no copy of this letter, nor affidavits of service by mail on either Pihlaja or Molitor.

On October 21, 1986, Soukup signed a new unlawful detainer complaint, alleging that Molitor failed to pay rent for September and October of 1986; that he failed to vacate the property after lawful notice to vacate; and that he broke the terms of the rental agreement. Molitor claims he was not served with a summons and complaint until October 23, 1986, one day after he mailed Soukup the outstanding amount.[1]

At a hearing on October 31, 1986, appellant appeared pro se. Pihlaja had informed the court he was not representing Molitor in the instant action.

Respondent complained that appellant failed to make the rent payments due on the first days of September and October; that appellant had failed to settle within thirty days a dispute with other tenants of the leased premises regarding the utility bills, as required by the stipulation; and that appellant failed to provide proof of insurance as required by the stipulation.

At the hearing, Soukup's counsel produced the money order postmarked October 22, 1986, with which Molitor had made payment of the outstanding amount of rent. He returned the money order to Molitor at the end of the hearing.

With respect to the utility bills, appellant asserted he had settled the utilities problem at the time of the hearing. He contended he could not change the meter until another tenant, Rome Cables, approved the change.

Appellant contended at the hearing that he had obtained insurance as required by the lease and the stipulation, and that insurance evidence must have been provided at the time of the stipulation, "Otherwise he would have exercised whatever rights he had back then or something." Appellant was unable to provide the court with the name of the insurance company or with the policy number, however. Appellant gave the court the name of the insurance agent who had allegedly arranged for the insurance.

After the hearing, the trial court entered summary judgment, granting the writ of restitution. The court held there were no disputed facts that would reflect upon issuance of the writ. In an order dated November 6, 1986, the trial court stayed the writ of execution until November 17, 1986. The court later extended that stay until July 20, 1987, and ordered appellant to make rent and utility payments. Molitor appeals the order issuing the writ.

## ISSUES

1. Did the trial court err by *sua sponte* granting summary judgment without notice to appellant prior to the hearing?

2. Did the trial court err by finding that, as a matter of law, appellant waived his right to a jury trial and his right to redemption?

3. Did the trial court err by granting respondent summary judgment where ap-

---

**1.** The complaint is in the trial court file, but the file contains no affidavit of service on appellant.

pellant claimed there were genuine issues of material fact?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The party opposing summary judgment must demonstrate that specific facts are in existence which create a genuine issue for trial. *Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.,* 253 N.W.2d 836, 838 (Minn.1977).

### I.

*Notice of Summary Judgment*

Here, there was no motion for summary judgment, and the trial court entered summary judgment *sua sponte.* Appellant complains he was deprived of the ten day notice required for entry of summary judgment under Minn.R.Civ.P. 56.03.

■ The court announced from the bench its intention to grant summary judgment in favor of respondent. Appellant did not raise the lack of written notice issue at the time of the hearing. This court need not address issues that were not raised before the trial court. *Benedict v. Benedict,* 361 N.W.2d 429, 431–32 (Minn.Ct.App. 1985).

### II.

*Right to Jury Trial*

Appellant contends he was entitled to a jury trial under Minn.Stat. § 566.07 (1986). The statute provides that in an unlawful detainer action:

the court shall hear and determine the action, unless it shall adjourn the trial as provided in section 566.08, but either party may demand a trial by jury.

Here, appellant requested a jury trial at the hearing:

MR. MOLITOR: Well he [Pihlaja] told me to ask for a jury trial.

THE COURT: We are back to that.

MR. MOLITOR: Your Honor, it says on that unlawful detainer thing that you are entitled to a jury trial.

THE COURT: I'm well aware of that. There is no doubt that an unlawful detainer action allows for jury trial.

Off the record.

(Whereupon a discussion was had off the record.)

THE COURT: The Court, after having heard the arguments of Mr. Soukup and his Attorney and also those of Mr. Ed Molitor, who is without counsel at this time, is going to make an order granting the writ of restitution at this point. Mr. Kueppers, I want you to draw an order with findings in it to the effect that I'm granting a summary judgment on this particular matter based on the lease itself * * * and on the agreement executed by the parties * * *.

The lease on which the court based its decision is not in the court file in this case. Presumably, it was filed with the court in the 1985 unlawful detainer action.

■ Here, appellant may have waived the right to a jury trial by signing the stipulation, which states:

in the event that any payment is not made in a timely manner Donald Soukup may immediately apply for a Writ of Restitution without any further Court action.

These words alone may be sufficient to waive appellant's right to a jury trial in the event of untimely rent payment. They do not, however, apply to breach of any other lease provisions or provisions of the 1985 stipulation. The trial court erred by holding, as a matter of law, that appellant waived his right to jury trial on all issues.

### III.

*Issues of Fact*

■ Appellant contends the trial court erred here by entering summary judgment because there were contested issues of fact. At trial, appellant contested the three breaches on the basis of which respondent sought writ of restitution: late

payment of rent; failure to settle the issue of utility payments with other tenants; and failure to provide proof of insurance. Appellant also denies he received notice to vacate the property. The record contains no evidence of notice to appellant.

Appellant admits he did not immediately settle the question of utility payments with the other tenant because he needed permission to change the meter, and permission was just recently granted.

It is not clear from the record when appellant began to make efforts to settle this matter. The trial court found "[t]hat there is uncontroverted evidence that Defendant has not yet resolved with the other tenants the utility usage on the premises." No affidavits or exhibits were filed with the trial court prior to the entry of judgment. The transcript indicates respondent claims appellant owes Rome Cable, the other tenant, $2000 back utility payments. Appellant claims,

> I did what I was instructed as far as to resolve the utilities and I didn't get authorization [from Rome Cable] until the letter from the attorney here on the 28th. Northern States Power would not change the meter until there was approval * * * from Rome Cable * * *.

Respondent's attorney was very familiar with the situation because he represented Rome Cable in the utilities matter, as well as the respondent in the instant action.

Finally, appellant claims he provided respondent with the proof of insurance required under the terms of the stipulation. Under the terms of the stipulation, appellant's failure to provide respondent with proof of insurance by 12:00 a.m. on November 15, 1985, would cause the writ of restitution to take effect immediately, and appellant would then have to vacate the premises. This stipulation does not, however, prevent appellant from proving that he did, in fact, provide respondent with evidence of insurance.

Appellant claims his attorney must have provided respondent with proof of insurance, arguing that respondent would other-

wise have initiated this proceeding much earlier. Appellant was able to give the court the name of the insurance agent who had allegedly procured the insurance, but was unable to name the insurer or to give the court the policy number.

However, appellant may have appeared in court without the insurance information because the complaint did not mention insurance.[2] If the issue of insurance was raised for the first time at the hearing, appellant would have had no notice to bring evidence of insurance to the hearing to refute the contention he breached that provision of the stipulation.

These questions constitute disputed issues of material fact.

### III.

*Right of Redemption*

Appellant contends that, under Minn. Stat. § 504.02 (1986), he has a right of redemption, which he exercised by tendering to respondent the money order for $500 prior to the hearing date. The statute provides, in part, that:

> an action to recover possession of the property * * * is equivalent to a demand for the rent and a reentry upon the property; but if, at any time before possession has been delivered to the plaintiff on recovery in the action, the lessee * * * pays to the plaintiff or brings into court the amount of the rent then in arrears, * * * the lessee * * * may be restored to the possession and hold the property according to the terms of the original lease.

Minn.Stat. § 504.02.

■ This statute has been interpreted to mean that:

> where the landlord seeks to evict the lessee for failure to pay rent, the tenant, so long as he remains in possession, shall be permitted to retain possession by paying all money due and owing the landlord. This "right of redemption" in the tenant applies until a court has issued an

---

2. The complaint alleges failure to pay rent, failure to vacate the property after having been given notice to do so, and breach of the rental agreement.

order dispossessing the tenant and permitting reentry by the landlord.

*The 614 Company v. D.H. Overmyer Co., Inc.*, 297 Minn. 395, 397, 211 N.W.2d 891, 894 (1973). The right of redemption is foreclosed at the time the order restoring the premises to the landlord is signed. *Paul McCusker and Associates, Inc. v. Omodt*, 359 N.W.2d 747, 749 (Minn.Ct.App. 1985).

Appellant claims that, by sending appellant the money order for the amounts owing for September and October rent, postmarked October 22, 1986, one day after respondent signed the complaint and more than one week before the hearing, he exercised his right of redemption. Respondent received the rent payment, but tendered it back to appellant at the hearing.

Respondent contends that by the terms of the stipulation, signed after he brought the 1985 unlawful detainer action, appellant waived his right of redemption. Paragraph ten of the stipulation provides that:

in the event that any payment is not made in a timely manner Donald Soukup may immediately apply for a Writ of Restitution without any further Court action.

Although this may constitute a waiver of appellant's right to a trial under Minn.Stat. § 566.07, this paragraph does not necessarily waive the right of redemption.

The public policy implicit in the redemption provisions of the statute may not lightly be diminished by contrary provisions in lease agreements.

\*    \*    \*    \*    \*    \*

We do not wholly foreclose the possibility that parties to a lease may in some case make a voluntary and intelligent waiver of this statutory right of redemption, but we caution that, in such case, the evidence of intent would have to be clear and convincing and the circumstances such as to override judicial abhorrence of forfeitures.

*The 614 Company*, 297 Minn. at 398, 211 N.W.2d at 894.

Under *McCusker*, appellant has not waived the right of redemption until the judge signs the order. *McCusker*, 359 N.W.2d at 749. Respondent contends that here the intention of the parties, as expressed in the stipulation, was clear. He claims that the interpretation of the contract was therefore a matter of which the trial court could properly dispose by summary judgment. *See Twin City Construction Co. of Fargo, North Dakota v. ITT Industrial Credit Co.*, 358 N.W.2d 716, 718 (Minn.Ct.App.1984) (for contract terms not patently ambiguous, summary judgment is appropriate, and where the parties' intent may be determined entirely from the writing, construction of the contract is for the court).

■ We disagree. Whether appellant actually waived his right of redemption is a contested issue of fact. *The 614 Company*, 297 Minn. at 397, 211 N.W.2d at 894, requires clear and convincing evidence of intent and circumstances that override the disfavor of forfeitures. The contract must be narrowly construed, and the waiver of the right to redemption must be clear. *See id.*

Whether appellant waived his right of redemption is a genuine issue and should not have been disposed of by summary judgment.

## DECISION

Appellant cannot raise the issue of lack of notice of summary judgment for the first time on appeal, and we will not address that issue.

The trial court erred by entering summary judgment, because there were genuine issues of material fact.

The trial court erred by holding, as a matter of law, appellant waived his right of redemption.

Reversed and remanded for trial.