# JOHN LIDSTROM, EXECUTOR OF THE ESTATE OF PALMA K. LIDSTROM, AND ANOTHER v. DONALD S. MUNDAHL, GUARDIAN OF EMMA NESTANDE, INCOMPETENT, AND OTHERS.

246 N. W. 2d 16.

August 13, 1976—No. 46061.

*Nelson & Nelson* and *Laurence M. Nelson,* for appellants.

*Willette, Kraft & Walser* and *Donald H. Walser,* for respondents.

Heard before Rogosheske, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Plaintiff, John Lidstrom, as administrator of his wife's estate and individually, sought construction of written instruments concerning certain Renville County farmlands and a partition or sale thereof. He appeals from a summary judgment dismissing his declaratory judgment and partition action on the ground of failure to state a claim upon which relief could be granted. The court, concluding that there was no genuine issue as to any material fact, treated defendants' pretrial motion to dismiss as one for summary judgment and determined that plaintiff had no vested property interest in the farmlands and had only an interest in sharing in the proceeds when and if the lands or any part thereof were sold. We affirm.

Elmer Nestande died intestate on September 6, 1958, and at the time of death owned a farm of 253 acres. Surviving him were six sisters and three children of a deceased sister. Emma Nestande, one of the surviving sisters and a defendant here by her guardian, lived with her brother on the farm until his death. Shortly after Elmer Nestande's death, the surviving sisters and children of the deceased sister signed two written agreements relative to the disposition of the estate. The recitals in the first agreement, dated October 9, 1958, recognize that Elmer Nestande had, before his death, expressed his desire to leave all of his property and estate to his sister Emma. That agreement was signed by all the heirs, including Palma Lidstrom, who was joined by her husband, the plaintiff here. The October 9 agreement provided in pertinent part that the heirs of Elmer Nestande conveyed and assigned all of their interest in the farmlands to Emma in return for "certain sums to be agreed upon hereafter by the parties in writing." By a quitclaim deed dated October

14, 1958, Palma Lidstrom, together with all the other parties to the October 9 agreement, conveyed all her interest in the farm to Emma. The October 14 deed contained no restrictions or reservations and was later recorded.

Contemporaneously with the execution of the quitclaim deed on October 14, the parties entered into a second agreement which recited that the parties wished to agree among themselves as to the disposition of "possible proceeds from any sale which may be made of [the] farm property * * * which farm is to be owned" by Emma in accordance with the October 9 agreement. The October 14 agreement accordingly provided that "if and when the farm" or any part is sold by Emma, "then and in that instance the proceeds from said sale" shall be divided one-half to Emma and the other one-half ratably among the other heirs-at-law of Elmer Nestande. The parties to the October 14 agreement specifically noted that the agreement did not constitute a lien, trust, or other encumbrance against Emma's farmland and was a personal agreement among the parties not running with the land.

The final decree of distribution in Elmer Nestande's estate was entered September 3, 1959, and pursuant to the agreement dated October 9, 1958, all the cash and personal property was assigned to Emma Nestande. The decree also recited that the title to Elmer's real property was vested in his heirs-at-law in their respective proportions—a recital which had no effect on the conveyance by the other heirs to Emma Nestande by quitclaim deed on October 14, 1958.

On August 21, 1961, Emma purchased the interests of the children of her deceased sister under the October 14 agreement by way of quitclaim deed for $4,427.50. A similar quitclaim deed was obtained from another sister on May 11, 1966, for the same sum. In September 1971, Emma Nestande came under guardianship. She is currently living in a rest home in St. Paul, Minnesota. The farm at issue is still an asset of Emma's guardianship.

No portion of the farm has been sold and fee title remains in Emma.

The trial court found the two written agreements of October 9 and October 14, along with the attendant quitclaim deeds, to be an unambiguous and integrated expression of the parties' intentions and determined that under these agreements plaintiff had no vested interest in the subject property and could not compel its conveyance or sale during Emma's lifetime.[1] In the absence of a sale, plaintiff has no present rights under the agreements. A conditional promise prevents anyone from acquiring any rights under the contract unless those conditions occur. Murphy v. John Hancock Mutual Life Ins. Co. 198 Minn. 459, 270 N. W. 136 (1936).

Plaintiff argues that the grant of summary judgment below was improper because genuine issues of material fact existed regarding the background and execution of the two agreements involved. Rule 56.03, Rules of Civil Procedure. Plaintiff first contends that when the October 9 and October 14 agreements are read together they are inconsistent and ambiguous in that the October 9 agreement makes reference to payment by Emma to the others of "certain sums to be agreed upon hereafter" and the October 14 agreement makes no reference to certain sums but instead provides for the division of the proceeds upon sale of the farm. We are persuaded, however, that no ambiguity exists here because the first agreement only imposed in general and indefinite terms a duty upon Emma to pay certain sums to the other parties in some as yet undefined circumstances, which circumstances were defined by the second agreement to be in the event of the sale of the farm.

Plaintiff's second claim that the two agreements were without consideration also cannot be sustained. As plaintiff now con-

---

[1] We note without deciding that Minn. St. 558.01 appears to provide that only parties with a present vested interest may force a partition or sale of real property. Section 558.27 protects the rights of parties with future interests in real property by allowing compensation to these parties when the underlying property is sold or divided.

cedes, the two agreements must be read together as an integrated agreement, and clearly the sharing in the proceeds upon sale is the consideration for the conveyances by the heirs. It is not essential that there even be consideration to support a quitclaim deed, and if there is no consideration, the deed operates as a gift and constitutes a valid conveyance. Bowen v. Willard, 203 Minn. 289, 281 N. W. 256 (1938).

Finally, plaintiff alludes to two instances since 1958 in which Emma paid cash in exchange for the interests of one sister and of the heirs of another under the October 14 agreement and suggests this conduct is inconsistent with the trial court's interpretation of the two agreements. This argument is without merit, since Emma in these transactions acquired only the interests of these parties in their share of the proceeds from the sale of the farm when and if that sale occurred. Summary judgment for defendants was proper in this case because the two agreements plaintiff sought to have construed contain an unambiguous and integrated expression of the parties' intentions, which fact excludes resort to the type of parol evidence plaintiff sought to submit to the trial court.

Affirmed.