Leo FROELICH, et al., Appellants,

v.

ASPENAL, INC., et al., Respondents.

No. C7–84–1994.

Court of Appeals of Minnesota.

June 11, 1985.

Joel D. Johnson, Moorhead, for appellants.

Patrick J. Roche, Jr., Virginia, for respondents.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment that neither respondent Tom Bonner, David Bednar, nor Viking Explosives, Inc. is indebted to appellant Froelichs in the sum of $355,016.49. We affirm.

## FACTS

On March 26, 1981, Leo Froelich sold his feed and pellet plants in Thief River Falls, Minnesota and in LaMoure, North Dakota, to respondent Aspenal, Inc. for $1,800,000. After initial payments were made, the remaining balance plus accrued interest was to be paid over a period of years with the next payment, in the sum of $100,000 plus accrued interest, due on April 1, 1982.

Froelich had unsuccessfully sought personal guarantees on the indebtedness from David Bednar and Tom Bonner, officers of Aspenal.

Aspenal was having problems obtaining financing and took possession of the Thief River Falls plant under an interim lease. Aspenal wished to purchase additional equipment for the plant, and, when unable to obtain financing, through Bonner, Aspenal's treasurer, solicited and received a $75,577 loan from Froelich. Aspenal, through Bonner, agreed to repay the loan within 60 days directly to the Northern State Bank from which Froelich had borrowed the money.

The loan was eventually evidenced by one note guaranteed in writing by Aspenal, by Bonner. This note was replaced twice, the last note guaranteed by Aspenal, by its corporate officer David Bednar. Because Aspenal did not repay the loan, Froelich paid the total sum of $79,910.13.

Aspenal also obtained a small business administration loan of $450,000. $100,000 of the proceeds were to be placed in escrow to be released on April 1, 1982, for the first payment due Froelich. At the request of Bonner, Froelich released this $100,000 to Aspenal for working capital purposes provided that the release "in no way is a waiver of the 4–1–82 payment to [Froelich] when due from Aspenal, Inc." Bonner promised he would personally see to it that Froelich got the $100,000 payment on April 1, which Froelich claims was a personal guarantee on which he relied to his detriment.

In March 1982, Bonner advised Froelich that the April payment would be late. In June 1982, Froelich advised Ted Risberg, an officer of Aspenal, that he was going to start legal proceedings to recover the $75,577 loan and the April 1, 1982 payment of $100,000. Risberg told him to talk to David Bednar, who was a director of Aspenal and President of Viking Explosives and Supply, Inc. Bednar was taking over Aspenal.

Froelich met Bednar at Viking Explosives' corporate office. Bednar personally guaranteed Froelich's indebtedness to the Northern State Bank by signing the back of the note. Froelich claims there was also an oral guarantee to reimburse Froelich if Aspenal did not pay the delinquent $100,000 April 1, 1982, payment and the $75,577 loan. This latter loan was subsequently paid.

Bednar also promised to pay Froelich $50,000 towards Aspenal's indebtedness which was subsequently paid.

Shortly after this meeting, Froelich lent Aspenal additional moneys, now totalling approximately $151,555.75, claiming Bednar personally guaranteed the loan.

### ISSUES

1. Did Tom Bonner personally guarantee Froelich's indebtedness to Northern State Bank?

2. Did David Bednar or Viking Explosives guarantee any of the loans made by Froelich on behalf of Aspenal?

### ANALYSIS

#### I

 Froelich's claims against Bonner, Bednar and Viking Explosives were based on the doctrine of promissory estoppel. Promissory estoppel implies "a contract in law where none exists in fact." *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981). Promissory estoppel is defined as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance * * * on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Id.* (quoting Restatement of Contracts § 90 (1932)). Estoppel cannot be posited on the claimed actions of an agent. Generally, "a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to

the contract." Restatement (Second) of Agency § 320 (1958).

 Froelich, however, claims Bonner's promise to pay the $100,000 should be enforced against Bonner personally and not only as an agent of Aspenal. Froelich testified that Bonner made the following promise:

> If you do this [release the $100,000], * * I'll personally guarantee you that you'll get your money when it's due.

Aspenal's plant manager, who overheard the conversation, testified that the "general gist" was that Bonner said "I will personally see that you get paid." He also testified that Bonner told Froelich that as soon as certain Aspenal loans were approved, he would be sure they were paid over to Froelich. Several other witnesses testified Froelich told them Bonner had given his personal guarantee. Bonner, himself, did not remember the exact words spoken.

This so-called personal guarantee was not in writing, whereas Froelich's personal guarantee of Aspenal's loans were in writing as were David Bednar's personal guarantees. The release itself was in writing. When the sale of the plant was originally negotiated, the corporate officers of Aspenal, Bonner, Bednar and Risberg, declined to give their personal guarantees. Bonner's statement was nothing more than an assurance that Bonner, as treasurer of Aspenal, would personally see that Aspenal paid the money to Leo Froelich when due. It is not disputed that Froelich is a successful and veteran businessman. On this record, the trial court's findings were not clearly erroneous and will not be set aside. Minn.R.Civ.P. 52.01.

#### II

Froelich claims Bednar made three promises to him:

1. That he would personally guarantee the April 1, 1982 $100,000 installment payment;

2. That he would personally guarantee the Northern State Bank loan and pay it if Aspenal didn't; and

3. If Froelich would loan additional funds to Aspenal to operate its Thief River Falls plant, that Bednar would personally guarantee the loans.

Froelich testified that at Viking Explosives in June 1982 he and Bednar discussed the delinquent $100,000 installment payment which had been due on April 1. He alleged Bednar told him, " 'Leo, if you don't take action against us, * * * Monday I'll give you $25,000 and then you'll have to wait a couple weeks and I'll give you another $25,000.' "

Bednar claims the $100,000 obligation was never discussed and as to the $50,000 payment, "[t]he understanding was * * * that I would do everything in my power to see that Aspenal could take care of that obligation" and he "would see to it that one way or another Aspenal would get $25,000 to [Froelich] * * * [a]nd would see what else could be done to get the other twenty-five to [Froelich]."

The $50,000 payments to Froelich were drawn on Aspenal's account after Viking loaned additional moneys to Aspenal to make the payment to Froelich. Bednar's promises to Froelich were in his corporate capacity and not in his individual capacity. The evidence sustained the trial court's findings.

■ As to the Northern State Bank loan of $75,577, Froelich claims that Bednar told him, "I'll see that it [the Northern State Bank debt] gets paid and you get off the hook." There was a personal written guarantee between the bank and Bednar, but it was discharged when the bank was paid by Froelich. The evidence does not support a finding that there was a personal guarantee between Bednar and Froelich.

As to the $151,555.75 loan to Aspenal, Froelich testified that Bednar said, "If you do that, I'll see that the bank gets paid." There is nothing reflecting personal guarantees for, once again, Bednar was acting in his corporate capacity. The trial court's findings were not clearly erroneous.

## DECISION

Neither Tom Bonner, David Bednar nor Viking Explosives, Inc. is indebted to Froelich.

Affirmed.