Kurt N. ASLAKSON, et al., Appellants,

v.

HOME SAVINGS ASSOCIATION, Upper Northwest Payment Plans Co., Respondents.

No. C6-87-1497.

Court of Appeals of Minnesota.

Dec. 15, 1987.

Robert A. Nicklaus, Chaska, for Kurt N. Aslakson, et al.

Robert L. Meller, Jr., Best & Flanagan, Minneapolis, for Home Sav. Ass'n.

Laura J. Hein, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for Upper Northwest Payment Plans Co.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN *, JJ.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

HUSPENI, Judge.

This appeal arises from the grant of summary judgment in favor of respondents on appellants' claim of tortious interference with contract. We affirm.

## FACTS

Appellants Kurt S. and Jeanette B. Aslakson entered into a conditional sales contract to purchase a mobile home from Luxury Housing, Inc. on April 11, 1975. Subsequently the contract was assigned to respondent Home Savings Association (Home).[1]

On September 13, 1979, appellants entered into a purchase agreement to sell the mobile home to Anita Lou Watson. Appellants knew that in order to assume appellants' loan a prospective buyer would have to submit to a credit check by respondent Upper Northwest Payment Plan (UNPP) and the purchase agreement between appellants and Watson contained the following language: "This offer is contingent upon buyer being able to assume the loan." Due to Watson's record of late payment of debt obligations, UNPP found her credit unsatisfactory.

A second purchase agreement to sell appellants' mobile home was entered into on January 2, 1980. The prospective buyers, Gayle and Judith Hepola, had been denied credit two months earlier on another mobile home purchase. Home declined to consent to transfer based upon Hepolas' insufficient credit history. Home later acquiesced to Hepolas' request for credit.

When Home sent its credit application to the Hepolas, it also sent a letter requiring a down payment. The credit insurer required a down payment equal to two to four monthly payments as part of its coverage on the original conditional sales contract. This down payment is rarely waived.

---

1. The contract provides "all of the rights and remedies of a secured party under the Uniform Commercial Code," for Home.

On February 28, 1980, Home agreed to an assumption by the Hepolas. The Hepolas subsequently declined to purchase.

On March 25, 1980, appellants commenced a lawsuit against respondents alleging respondents wrongfully rejected applications of appellants' assignees and alleging interference by respondents with appellants' contracts. Appellants further alleged the conditional sales contract was freely assignable and respondents could not set conditions for an assumption. Appellants sought compensatory damages, attorney fees, injunctive relief and punitive damages.

A third attempt to purchase appellants' mobile home was successful. On April 25, 1980, appellants entered into a purchase agreement with Timothy Raidt. Within five days, Home consented to Raidt's assumption and the sale was eventually concluded. Raidt's down payment was waived through efforts made by Home.

On March 6, 1987, Home moved for summary judgment. UNPP joined in the motion. After oral arguments heard April 9, 1987, the trial court granted respondents' motion for summary judgment on April 21, 1987. Judgment was entered May 5, 1987, and appeal is taken from the judgment.

### ISSUE

Did the trial court err in determining, as a matter of law, that appellants' claims of respondents' wrongful interference with contracts were invalid?

### ANALYSIS

The basis of appellants' argument is not that there are material facts in dispute. Instead, appellants assert that the undisputed facts as presented support their cause of action for tortious interference of contract and inducing breach of contract. Therefore, argue appellants, summary judgment should have been awarded to them.

The Minnesota Supreme Court distinguishes interference with contract from inducing breach of contract:

"Interference with contract" is somewhat broader than "inducing breach of contract" in that the former includes " 'any act injuring or destroying persons or property which retards, makes more difficult, or prevents performance, or makes performance of a contract of less value to the promisee.' "
*Royal Realty Co. v. Levin*, 244 Minn. 288, 291 n. 5, 69 N.W.2d 667, 671 n. 4 (1955).

Nevertheless, basic elements for either interference with contract or inducing breach of contract are:

(1) existence of a contract;

(2) alleged wrongdoer's knowledge of the contract;

(3) his intentional procurement of its breach;

(4) without justification; and

(5) damages resulting therefrom.
*Id.* at 292, 69 N.W.2d at 671.

With regard to the existence of a contract, the trial court determined there was no valid contract between appellants and either of the two prospective buyers.

Since the contract between appellants and respondents is for the sale of goods (the mobile home), it is governed by Minn. Stat. ch. 336, Minnesota's Uniform Commercial Code. Appellants' attempt to sell their mobile home to prospective buyers contingent upon assumption of the loan held by respondents was an attempt to delegate appellants' duty to repay that loan. Appellants' right to delegate contractual duties is limited by Minn. Stat. § 336.2-210 (1978), which provides in entirety:

(1) A party may perform his duty through a delegate unless otherwise agreed or unless *the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.* No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

(2) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other

party, or *increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.* A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation can be assigned despite agreement otherwise.

(3) Unless the circumstances indicate the contrary a prohibition of assignment of "the contract" is to be construed as barring only the delegation to the assignee of the assignor's performance.

(4) An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and *unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties.* This promise is enforceable by either the assignor or the other party to the original contract.

(5) *The other party may treat any assignment which delegates performance as creating reasonable grounds for insecurity* and may without prejudice to his rights against the assignor demand assurances from the assignee (section 336.2–609).

*Id.* (emphasis added).

The first purchase agreement between appellants and Watson was contingent upon Watson being able to assume appellants' loan. Respondents did not approve Watson due to her unsatisfactory credit history. Therefore, no contractual agreement between appellants and Watson ever arose.

The second purchase agreement between appellants and the Hepolas also failed because the Hepolas initially could not pass respondents' credit check.

The trial court determined that respondents' approval of buyers' assumption of the loan was a condition precedent to any contract between buyer and a subsequent purchaser. The Minnesota Supreme Court has stated:

> A condition precedent, as known in the law, is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend.

*Lake Company v. Molan,* 269 Minn. 490, 498–99, 131 N.W.2d 734, 740 (1964).

A conditional promise prevents a party from acquiring any rights under the contract unless those conditions occur. *Lidstrom v. Mundahl,* 310 Minn. 1, 4, 246 N.W.2d 16, 18 (1976). Furthermore, a breach of contract does not occur when a contract is conditioned on third-party approval and the approval is not received. If the event required by the condition does not occur, there can be no breach of contract, since the contract is unenforceable. *See, e.g., 451 Corporation v. Pension System for Policemen and Firemen of the City of Detroit,* 310 N.W.2d 922, 924 (Minn.1981).

We believe the trial court correctly determined that a contract between appellants and a subsequent buyer could not arise absent performance of a condition precedent: respondents' approval of the subsequent buyer's assumption of the loan. Under the provisions of section 336.2–210, which must govern here, appellants were prohibited from delegating their contractual duties if respondents had a substantial interest in having appellants perform or if an assignment would materially increase respondents' burden or risk or impair its chance of obtaining return performance. Clearly, the relationship between appellants and respondents is one to which the statute is directed. In the words of the trial court:

> In the instant case, [respondents] had a substantial interest in having [appellants] perform their obligation. [Appellants] had been determined to be creditworthy. Moreover, [appellants] had sufficient equity in the mobile home so that

they were unlikely to default. On the other hand, if [appellants] were allowed to make any assignment they wished, [respondents'] risk on the contract could have increased materially and the chance of obtaining return performance could have materially decreased. In fact, [respondents] made a good faith determination that an assignment to either of the first two potential purchasers would have materially impaired [respondents'] contractual rights. Thus, [respondents] had an absolute right to refuse [appellants'] request to assign their contractual obligations to others.

Additionally, even if this court were to determine that valid contracts existed between appellants and prospective buyers, the issue of respondents' justification would have to be addressed and respondents would prevail here too.

According to the Minnesota Supreme court, "[l]iability for wrongful interference may be avoided by showing that the [respondent] was justified by a lawful object which he had a right to assert." *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 532, 134 N.W.2d 892, 897 (1965).

The Minnesota Supreme Court has stated:

> Justification is the most common affirmative defense to an action for interference. It is employed to denote the presence of exceptional circumstances which show that no tort was in fact committed and lawful excuse which excludes actual or legal malice.

*Johnson v. Radde*, 293 Minn. 409, 411, 196 N.W.2d 478, 480 (1972).

The standard for proving justification is reasonable conduct under all the circumstances of the case. *Bennett* at 537, 134 N.W.2d at 900. When one acts in pursuance of a superior or equal right, that person is legally justified in his action. *Id.* at 532, 134 N.W.2d at 897.

The trial court determined respondents "had a substantial interest in having [appellants] perform their obligation." The trial court further determined appellants had been deemed "credit worthy" by re-

spondents and they had established sufficient equity in their mobile home to make it unlikely they would default. If appellants delegated their duty to pay or assigned their rights to the contract, respondents' risk would increase materially.

Respondents did not refuse assignment of appellants' obligation, they merely imposed realistic conditions on the assignment. Respondents required the proposed assignee qualify as borrower pursuant to a standard credit check and make a down payment to establish an equity interest in the mobile home.

Minn. Stat. § 336.2–210(5) permits the nonassigning party to "demand assurances from the assignee." Assurances demanded are to meet commercial standards. Minn. Stat. § 336.2–609(2). Credit checks and equity interests are commercially reasonable assurances and could not be met by the prospective buyers. Respondents were within their right to refuse appellants' assignment.

## DECISION

The trial court's grant of summary judgment in favor of respondents regarding appellants' claim of tortious interference of contract is affirmed.

Affirmed.