NATIONAL UNION FIRE INSURANCE, Respondent,

v.

SCHWING AMERICA, INC., Appellant.

No. CX–89–325.

Court of Appeals of Minnesota.

Oct. 10, 1989.

Jeffrey F. Shaw, Colleen V. Short, Briggs and Morgan, P.A., St. Paul, for appellant.

William G. Cottrell, David W. Evans, John A. Halpern & Associates, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and NORTON and LOMMEN *, JJ.

## OPINION

FOLEY, Judge.

This breach of contract action for nonpayment of an insurance premium was tried to a jury. The trial court denied appellant Schwing America, Inc.'s motion for a directed verdict based on respondent National Union Fire Insurance's failure to prove a condition precedent had been satisfied. By special verdict, the jury found that Schwing and National Union had entered into a contract and that Schwing owed National Union $60,074. Schwing's alternative motion for judgment notwithstanding the verdict for a new trial was denied, and Schwing has appealed. We reverse.

## FACTS

Schwing, the United States subsidiary of a West German business, is engaged in the business of manufacturing and selling concrete pumps. In order to do business, Schwing must have comprehensive general liability insurance, which covers general liability and products liability. The testimony of Thomas Anderson, Schwing's executive vice president and acting general manager, was that nobody would do business with Schwing without first obtaining proof of insurance.

The premium for the policy Schwing carries is based on a price per $1,000 in sales. In the 1984–85 policy year, Schwing paid $2.65 per $1,000 in sales.

Schwing's policy ran from October 1 of one year to October 1 of the next year. On September 25, 1985, Schwing received a memorandum from its insurance broker stating that the premium for the 1985–86 policy would be approximately $8 per $1,000 in sales.

On Friday, September 27, 1985, Schwing's insurance broker presented a quote for renewal of the policy with a premium calculated on the basis of $12 per $1,000 in sales. Schwing's policy was due to expire at midnight on the following Monday. The quote from Schwing's insurance broker contained the following language: "Quotation is subject to approval by the Insurance Department, State of Minnesota."

The following Monday, Schwing met with representatives of its insurance broker to protest the increase. Schwing investigated other insurance options, but was unable to come up with a workable solution before its policy expired. Schwing then asked its insurance broker to bind coverage.

Schwing's insurance broker contacted National Union requesting that National Union bind coverage for Schwing. The request included "all terms and conditions as per your * * * renewal quotation." Na-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

tional Union bound coverage. An endorsement to the policy provided: "All other terms and conditions remain unchanged."

The premium for the policy was $480,000 for $1 million coverage. This premium was due within 30 days after the commencement date of the policy, or November 1, 1985. The premium was an estimated premium based on estimated sales. The actual premium was to be recalculated at the end of the policy period based on Schwing's actual sales for the year. The estimated premium was based on estimated sales of $40 million between October 1, 1985 and October 1, 1986. Schwing's actual sales for that period were $33,600,000. Schwing did not pay the estimated premium and the policy was canceled on November 13, 1985.

In January 1986, National Union sent Schwing a bill for $56,640. This figure represented the prorated share of the estimated premium for the 43–day period the policy was in effect. National Union later audited Schwing for this 43–day period and found that Schwing had $6,371,279 in actual sales for this period. National Union then recalculated the premium based on Schwing's actual sales and sent Schwing a revised bill in the amount of $76,640. Schwing refused to pay these bills.

National Union then commenced a breach of contract action, claiming it was owed a $76,455 premium for the 43–day period it insured Schwing. The matter proceeded to a jury trial. At the close of National Union's case, Schwing moved for a directed verdict, claiming that the Minnesota insurance department had not approved the policy, and therefore, a condition precedent existed which had not been fulfilled. The trial court denied the motion.

The jury returned a verdict finding that Schwing entered into a contract with National Union, implicitly finding that the premium for the insurance contract was to be calculated at a rate of $8 per $1,000 in sales, and that Schwing owed National Union $60,704 plus interest.[1] Schwing moved for judgment notwithstanding the verdict

or a new trial, and National Union moved for judgment notwithstanding the verdict claiming the damages were insufficient. All post-trial motions were denied, and Schwing has appealed.

## ISSUES

1. Was approval of the policy by the Minnesota insurance department a condition precedent to contract formation?

2. If approval by the Minnesota insurance department was a condition precedent, did Schwing waive its right to insist on compliance with the condition?

## ANALYSIS

### 1. *Condition Precedent*

 The Minnesota Supreme Court has defined a condition precedent as follows:

> A condition precedent, as known in the law, is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend.

*Lake Co. v. Molan,* 269 Minn. 490, 498–99, 131 N.W.2d 734, 740 (1964) (quoting *Chambers v. Northwestern Mutual Life Insurance Co.,* 64 Minn. 495, 497, 67 N.W. 367, 368 (1896)). When a contract contains a condition precedent, a party to the contract does not acquire any rights under the contract unless the condition occurs. *Aslakson v. Home Savings Association,* 416 N.W.2d 786, 789 (Minn.Ct.App.1987).

> Furthermore, a breach of contract does not occur when a contract is conditioned on third-party approval and the approval is not received. If the event required by the condition does not occur, there can be no breach of contract, since the contract is unenforceable.

Schwing pay National Union? The jury did not actually find a breach of contract by Schwing.

---

**1.** The special verdict form contained only two questions: (1) Did the parties enter into a contract? and (2) If so, what sum of money should

*Id.* In *Fillmore v. Iowa National Mutual Insurance Co.*, 344 N.W.2d 875 (Minn.Ct. App.1984), this court stated:

Insurance policies are similar to other contracts; they are matters of agreement by the parties and the function of a court is to determine what the agreement was and enforce it.

*Id.* at 877. In construing an insurance contract, the policy must be considered as a whole. *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645, 652 (Minn.1986). When the intention of the parties to a contract may be determined wholly from the writing, the construction of the contract is a question of law for the court to resolve. *Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966); *Empire State Bank v. Devereaux*, 402 N.W.2d 584, 587 (Minn.Ct.App.1987).

■ In the present case, the insurance contract provided:

V. *CONDITIONS* * * * Quotation is subject to approval by the Insurance Department, State of Minnesota.

This language is clearly a condition precedent. *See Aslakson*, 416 N.W.2d at 787 ("This offer is contingent upon buyer being able to assume the loan"); *451 Corp. v. Pension System for Policemen & Firemen*, 310 N.W.2d 922, 923 (Minn.1981) ("Said mortgage loan is subject to approval of the documents as to legality and form by the Office of the Corporation Counsel" for the City of Detroit). National Union chose to make approval by the Commissioner a condition of the contract, and National Union cannot avoid the consequences of non-compliance. Approval by the Commissioner of Insurance is not a *pro forma* condition; rather, it is an essential part of the insurance proposal. *See* Minn.Stat. § 70A.06, subd. 2 (1984).

Among other things, the trial court instructed the jury as follows:

A breach of contract occurs when either party to the contract fails to perform as promised in the contract. Such a breach may occur with regard to either the expressed or implied provisions of the contract.

By the phrase expressed provisions, it is meant the term or condition which is recognized by the parties to exist and to bind them in their actions despite the fact that it was not expressly enumerated or agreed upon.

Therefore, in order for you to find that a contract in question has been breached you must find that the plaintiff failed to perform as it agreed to do, either expressly or as it may be implied from expressed provisions of the contract.

In order to warrant recovery, the plaintiff has the burden of proving by the preponderance of evidence the essential elements of his claim by preponderance of evidence.

 * * * * * *

If the plaintiff fails to establish any essential elements of its claim by the preponderance of evidence, you must find for the defendant. * * *

* * * if you find that the plaintiff has failed or neglected to perform the conditions of the agreement, you must find for the defendant.

National Union did not file a notice of review of these instructions, and they are the law of the case. There was no evidence of National Union's performance of an essential element of the insurance contract. The jury's verdict is inconsistent with the evidence and contrary to the court's instructions.

2. *Waiver*

■ National Union contends Schwing waived its right to insist on fulfillment of the condition precedent by accepting the insurance coverage. Schwing, on the other hand, contends that it could not have waived the condition because it was unaware that the condition had not been fulfilled until this action was commenced.

"A party can waive a condition by receiving further performance from the other party, with *knowledge that the condition has not been performed.*" *Old Mill Printers v. Kruse*, 392 N.W.2d 621, 623 (Minn. Ct.App.1986) (emphasis added).

Ignoring a provision in a contract will constitute waiver, * * * and waiver may

be found where a party continues to exercise rights under a contract even though he *knows a condition has not occurred* or cannot be performed.

*Appollo v. Reynolds*, 364 N.W.2d 422, 424 (Minn.Ct.App.1985) (citations omitted) (emphasis added). Schwing argues that before a court can find waiver of a condition precedent, the party claiming failure of the condition must be aware that the condition has not been fulfilled and proceed with the contract despite the nonfulfillment of the condition precedent.

This court has stated:

A waiver in contract law is "an intentional relinquishment of a known right, and it must 'clearly be made to appear from the facts disclosed.'"

*Citizens National Bank v. Mankato Implement, Inc.*, 427 N.W.2d 23, 27 (Minn.Ct. App.1988), *aff'd*, 441 N.W.2d 483 (Minn. 1989) (citations omitted). National Union presented no evidence that Schwing was aware of the failure of a condition precedent and chose to proceed despite such failure. National Union's waiver argument must therefore fail.

## DECISION

Approval by the Minnesota Commissioner of Insurance was a condition precedent to formation of an insurance contract. This approval was never obtained, and there is no evidence Schwing waived it. We reverse with directions to enter judgment for Schwing dismissing National Union's complaint.

Reversed.