MINNWEST BANK CENTRAL,
Respondent,

v.

FLAGSHIP PROPERTIES LLC,
et al., Appellants,

U.S. Small Business Administration,
et al., Defendants.

No. A04–476.

Court of Appeals of Minnesota.

Dec. 7, 2004.

John F. Bonner, III, Robyn K. Johnson, Bonner & Borhart, L.L.P., Minneapolis, MN, for appellants.

Virginia A. Bell, Mary R. Vasaly, Maslon Edelman Borman & Brand, L.L.P., Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; PETERSON, Judge; and FORSBERG, Judge.[*]

## OPINION

WRIGHT, Judge.

To recover outstanding debts, respondent brought a foreclosure by action. Appellants filed counterclaims, alleging defamation, promissory estoppel, breach of contract, and breach of the implied covenant of good faith and fair dealing. The district court ordered summary judgment in favor of respondent and against appellants' counterclaims. Appellants now challenge the district court's ruling, arguing that the district court erred when it concluded that (1) a condition precedent in the parties' commitment letter was not satisfied and, thus, respondent had no duty to provide long-term financing; (2) respondent was entitled to summary judgment on appellants' counterclaims; and (3) postjudgment interest on a foreclosure decree is calculated at the loan rate, rather than the statutory postjudgment interest rate. Respondent moved to dismiss as moot appellants' appeal as it relates to the postjudgment interest rate on an unsecured debt. We affirm in part, reverse in part, and remand. We also deny respondent's motion.

## FACTS

At all times relevant to this appeal, appellants Robert Barwick, Janet Barwick, Flagship Properties LLC, and Barwick Manufacturing Company (collectively Flagship) were in the business of building and operating hotels. In the spring of 1997, Flagship sought financing from respondent Minnwest Bank Central (Minnwest) for the construction of a new hotel. Minnwest granted Flagship a construction loan in July 1997 for $1.3 million, to be paid in full by July 24, 1998. The loan agreement was accompanied by a commitment letter, which reiterated the terms of the construction loan and added the following:

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

As stated earlier, [Minnwest] intends to participate with the Small Business Administration 504 Loan Program whereby $300,000.00 of the construction loan amount will be sold on the secondary market after project completion at the then prevailing rate. The remaining balance will be financed by the Bank. The terms of this will be an amortization of at least ten years (120 equal payments) at a five-year fixed rate commitment . . . .

Flagship subsequently applied for a Section 504 loan in the amount of $311,000 and, in September 1997, received preliminary authorization from the United States Small Business Administration (SBA).[1] The preliminary authorization provided that, before final approval, Flagship must certify "that no unremedied material adverse change has occurred in the condition of [Flagship] . . . since the date of application which would endanger [Flagship's] ability to meet the debt service [for the loan]."

Flagship completed construction and opened its hotel in February 1998. The SBA subsequently received financial statements indicating that the hotel was operating at a loss. As a result, the SBA found a "material adverse change," and in March 1999, it declined to proceed with the Section 504 loan until Flagship could demonstrate positive cash flow.

Until mid–2001, the parties agreed to several extensions on the deadline for the repayment of the Minnwest construction loan. The extensions were based on the parties' expectation that Flagship would eventually generate positive cash flow from the hotel and, thus, would satisfy the requirements to receive the Section 504 loan. But in the meantime, Minnwest did not provide long-term financing for the "remaining balance" of the construction loan.

Minnwest informed Flagship in April 2001 that its construction loan had been "classified" and that it would have to seek long-term financing for the loan elsewhere. Flagship solicited several other institutions but was unable to procure financing, purportedly because it disclosed that Minnwest had "classified" the construction loan.

Minnwest formally demanded payment of the construction loan in full in July 2002 and subsequently brought an action in foreclosure to recover this and other debts. Flagship brought counterclaims, alleging defamation, promissory estoppel, breach of contract, and breach of the implied covenant of good faith and fair dealing. Minnwest then moved for summary judgment on the foreclosure action and on Flagship's counterclaims. The district court granted Minnwest's motion, dismissed Flagship's counterclaims, and ordered judgment for the amount due on the construction loan. The district court further ordered that, following the entry of judgment, interest would continue to accrue at a rate equal to that of the original loan.[2] This appeal followed.

1. Flagship submitted its application for the SBA loan through Minnwest, which in turn relayed the application to the Minnesota Business Finance Corporation (MBFC). The MBFC is a nonprofit "certified development company" that administers the Section 504 loan program on the SBA's behalf. *See generally* 13 C.F.R. § 120.2(c) (2004) (requiring that a "certified development company" provide final portion of long-term financing with 504 loan made from debenture proceeds and guarantied by the SBA). The SBA is the final arbiter for Section 504 loans.

2. Neither the parties nor the district court specifically itemized how postjudgment interest would be calculated, but the construction loan provided for a variable interest rate of .75 percent over "Norwest Base." Based on the judgment, which determined that $1,359,323.56 was the amount due and assessed postjudgment interest of $249.42 per

## ISSUES

I. Did the district court err in holding that Minnwest had no duty to provide long-term financing for the construction loan?

II. Are there sufficient issues of material fact to defeat summary judgment on Flagship's counterclaims?

III. Did the district court err in awarding postjudgment interest at the loan rate instead of the statutory rate?

## ANALYSIS

Flagship initially disputes the district court's determination that Minnwest had no duty to provide long-term financing and that Flagship's counterclaims lacked merit.

When reviewing a summary judgment, we determine whether any genuine issue of material fact exists and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). A genuine issue for trial must be established by substantial evidence. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69–70 (Minn.1997). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 69 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### I.

Flagship challenges the district court's determination that Minnwest's duty to provide long-term financing was subject to an unsatisfied condition precedent. Flagship contends that the contract does not contain a condition precedent. In the alternative, Flagship implies that, because Minnwest improperly frustrated the satisfaction of the condition, Minnwest is not excused from its duty to perform.

■ A condition precedent is an event that must occur before a party is required to perform a certain contractual duty. *Carl Bolander & Sons, Inc. v. United Stockyards Corp.,* 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). "[N]o particular code words [are] needed to form an express condition." *Id.* (citing 5 Samuel Williston, *Williston on Contracts* § 671 (3d ed. 1961)). In *Aslakson v. Home Sav. Ass'n,* 416 N.W.2d 786 (Minn.App.1987), we considered the effect of a contract requiring a party to establish credit as a condition precedent. The controversy involved a sales contract, which provided in relevant part, "This offer is contingent upon buyer being able to assume the loan." *Id.* at 787. We concluded that this language created a condition precedent. *Id.* at 789. Because the purchaser was unable to demonstrate acceptable credit, the seller had no obligation to complete the sale. *Id.* at 790.

The Minnesota Supreme Court in *451 Corp. v. Pension Sys. for Policemen & Firemen,* 310 N.W.2d 922 (Minn.1981), reached the same conclusion based on a more complex set of facts. The owners of an office building had a short-term construction loan and sought long-term financing from a state pension fund. *Id.* at 922. The parties executed a contract, which stated that the loan was "subject to approval of the documents as to legality and form" by a state official. *Id.* at 923.

day, the district court ordered simple annual interest of approximately 6.70 percent. Regardless of whether these figures are precisely accurate, neither party contests on appeal that the district court applied the contract interest rate.

On review of the contract, that state official found an illegal amortization and rejected the loan. *Id.* The supreme court concluded that, because the approval condition was not met, the pension fund had no obligation to supply the loan. *Id.* at 924; *see also Nat'l Union Fire Ins. v. Schwing America, Inc.,* 446 N.W.2d 410, 412 (Minn.App.1989) ("[A] breach of contract does not occur when a contract is conditioned on third-party approval and the approval is not received." (quoting *Aslaksan,* 416 N.W.2d at 789)).

■ Here, the July 1997 commitment letter provided in relevant part:

> [Minnwest] intends to participate with the Small Business Administration 504 Loan Program whereby $300,000.00 of the construction loan amount will be sold on the secondary market after project completion at the prevailing rate. *The remaining balance will be financed by the Bank.*

(Emphasis added.) This language does not provide an unqualified promise to supply long-term financing. Rather, it indicates that Flagship agreed to obtain a portion of long-term financing from a Section 504 loan. Only after this event would the bank have a duty to provide long-term financing for the "remaining balance." The letter explicitly contemplated that Flagship would qualify for credit from the SBA. Thus, it is indistinguishable from other contracts in which conditions precedent require third-party approval. *See 451 Corp.,* 310 N.W.2d at 924. Because the SBA never authorized a Section 504 loan, the condition precedent was not satisfied. Accordingly, Minnwest had no duty to provide long-term financing.[3]

Flagship maintains that the district court relied on inadmissible hearsay to evaluate whether the condition precedent was satisfied. It alleges that the only proof of an unsatisfied condition precedent was a statement, indirectly from the SBA to officers at Minnwest, directing Minnwest not to close the Section 504 loan. But as the nonmoving party on a motion for summary judgment, it was Flagship's burden to establish by substantial evidence that there was a genuine issue for trial. *DLH, Inc.,* 566 N.W.2d at 69–70. Assuming for the purpose of our analysis that the statement was not admissible, there was no evidence that the Section 504 loan had in fact closed, and thus, no duty to finance the remaining balance. Because there was no genuine issue of fact as to whether the condition precedent was satisfied, Flagship's argument on this point is unavailing.

■ Flagship contends that Minnwest interfered with the process for obtaining the Section 504 loan, thereby preventing the occurrence of the condition precedent. If a party to a contract unjustifiably prevents the occurrence of a condition precedent, then that party's duty to perform is not excused. *In re Hennepin County 1986 Recycling Bond Litigation,* 540 N.W.2d 494, 502–03 (Minn.1995). But prevention may be justified by the pecuniary circumstances of the other party. *See Nodland v. Chirpich,* 307 Minn. 360, 366, 240 N.W.2d 513, 516 (1976) (quoting Restatement of Contracts § 295 (1932)).

To establish interference, Flagship alleges that the SBA sent Minnwest a letter to proceed with the Section 504 loan. This letter, however, is not part of the record. We assume for the purpose of our analysis that Minnwest declined to proceed. Even when the facts are viewed in the light most

---

3. Because we conclude that Minnwest had no duty to perform in accordance with the terms of the commitment letter, we need not address Minnwest's alternative argument that the commitment letter was not a contract.

favorable to Flagship, the only reasonable conclusion is that Minnwest declined to proceed because of Flagship's poor financial condition. As such, Minnwest's prevention of the condition precedent, if indeed this occurred, was justified and not a bar to summary judgment on behalf of Minnwest.

## II.

Flagship also challenges the summary judgment in favor of Minnwest, dismissing Flagship's counterclaims for defamation, promissory estoppel, breach of contract, and breach of the covenant of good faith and fair dealing.[4]

### A.

■ Defamation ordinarily is established by proof of a statement communicated to someone other than the claimant that is false and that harmed the claimant's reputation and esteem in the community. *Weinberger v. Maplewood Review,* 668 N.W.2d 667, 673 (Minn.2003). Under limited circumstances, a defamation claim may be established even though the statement was communicated only to the claimant. If the claimant is compelled to communicate the statement to another, and this duty is foreseeable to the original declarant, then the declarant may be liable for defamation. *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 888 (Minn.1986).

Flagship asserts that it was compelled to disclose Minnwest's statement that the construction loan was "classified." For the purpose of our analysis, viewing the record in the light most favorable to Flagship, we presume that Minnwest's statement was false and that Flagship was compelled to publish the statement.

■ The dispositive issue is whether Minnwest's statement is entitled to a qualified privilege, which provides a complete defense to common-law defamation. A qualified privilege is applied as a matter of law, in certain contexts when a candid statement is encouraged. *Bol v. Cole,* 561 N.W.2d 143, 149 (Minn.1997). A statement is protected by a qualified privilege if it is made in good faith, for a proper reason, and is based on probable cause. *Keuchle v. Life's Companion P.C.A., Inc.,* 653 N.W.2d 214, 220 (Minn.App.2002).

■ Minnesota authorities have long established that the statements of a financial officer regarding the creditworthiness of another are protected by a qualified privilege. *See Froslee v. Lund's State Bank of Vining,* 131 Minn. 435, 437–38, 155 N.W. 619, 620 (1915) (holding that bank's statements that buyer was "financially weak and ... in the habit of borrowing from farmers" were privileged); *Lowry v. Vedder,* 40 Minn. 475, 475, 42 N.W. 542, 542 (1889) (noting that commercial agency's reports containing statements injuring plaintiff's credit are privileged as long as made in good faith). Here, Minnwest classified the loan and explained its status based on Flagship's negative cash flow. Because this statement about Flagship's creditworthiness was made in good faith, for a proper reason, and was based on probable cause, Minnwest's statement is entitled to qualified-privilege protection.

■ Malice will defeat a qualified privilege when a statement is based on ill will, improper motive, or an intent to injure the claimant without cause. *Bauer v. State,* 511 N.W.2d 447, 449 (Minn.1994). But malice cannot be inferred from a dispassionate statement based on reasonable information. *See, e.g., Buchanan v. State,*

---

4. Although Flagship also brought a counterclaim for unjust enrichment, Flagship does not raise that issue on appeal. We, therefore, do not address it here.

*Dep't of Health,* 573 N.W.2d 733, 738 (Minn.App.1998) (holding that state department's correction orders drafted during course of work duties contained no evidence of malice), *review denied* (Minn. Apr. 30, 1998); *Michaelson v. Minn. Mining & Mfg. Co.,* 474 N.W.2d 174, 182 (Minn.App.1991), *aff'd,* 479 N.W.2d 58 (Minn.1992) (holding that letter from employer candidly addressing concerns about employee's job performance lacked evidence of malice).

On a motion for summary judgment, a claim of malice will not defeat a qualified privilege in the absence of some facts demonstrating the animosity of the adverse party. *Wallin v. State, Dep't of Corrections,* 598 N.W.2d 393, 402–03 (Minn.App.1999), *review denied* (Minn. Oct. 21, 1999). Flagship failed to argue the existence of any facts demonstrating that Minnwest's statement was motivated by ill will or improper motive. Because the record lacked any evidence of malice to overcome the application of a qualified privilege to Minnwest's statement, the district court did not err in granting summary judgment in favor of Minnwest on Flagship's defamation counterclaim.

## B.

Promissory estoppel provides an equitable remedy to parties that lack recourse on an enforceable contract. *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 746 (Minn.2000). If a clear and definite promise is made to a promisee, the promisor intends to induce reliance on the promise, and the promisee reasonably relies on the promise, then the promise is enforceable to prevent an injustice. *Heidbreder v. Carton,* 645 N.W.2d 355, 371 (Minn.2002). The district court determined that, because Flagship did not demonstrate that Minnwest made a "clear and

definite promise," Flagship's promissory estoppel counterclaim failed.

We have previously considered whether a promise of credit is sufficiently clear to support an action for promissory estoppel. In *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.,* a surviving partner refused to purchase his deceased partner's interest in a business unless a bank promised to supply a $5 million line of credit. 481 N.W.2d 875, 877 (Minn.App.1992), *review denied* (Minn. May 15, 1992). Purportedly in reliance on the bank's promise, the partner purchased the entire business, which then defaulted on its debts. *Id.* at 877–78. We reversed summary judgment, concluding that the partner raised a genuine issue of material fact as to whether the bank had made a clear and definite promise. *Id.* at 880.

These facts contrast with *Froelich v. Aspenal, Inc.,* 369 N.W.2d 37 (Minn.App. 1985), which involved a corporation that owed significant debt to its former controlling shareholder. When that shareholder threatened action to recover the debt, a corporate officer responded, "I'll personally guarantee you that you'll get your money when it's due." *Id.* at 39. On review, we held that the corporate officer had not made a clear promise to personally secure the loan. *Id.*

The Minnesota Supreme Court considered similar issues in *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845 (Minn.1995). To purchase property, a developer requested $3.6 million in financing from the city. *Id.* at 847. The city's counsel issued a "memorandum of understanding," and the city passed a resolution that preliminarily approved the financing. *Id.* But the developer and the city never settled on a specific amount to be financed. *Id.* The supreme court affirmed the entry of summary judgment in favor of the city, concluding that reliance on the promise

was not reasonable when the proposal was not finalized. *Id.* at 848.

Flagship summarily contends that, between 1997 and 2002, Minnwest promised to provide long-term financing for the construction loan. It also asserts that, in March 1999, after the SBA rejected financing for the Section 504 loan, Minnwest promised to supply long-term financing and "keep all of it right here, in house." These facts, however, do not evince a clear, definite promise. When the SBA loan was rejected, Minnwest may have responded with vague assurances of additional financing, *see Froelich*, 369 N.W.2d at 39, but it did not produce a clear and definite counterproposal, *see Nicollet Restoration, Inc.*, 533 N.W.2d at 848. Flagship's promissory estoppel counterclaim, therefore, does not state sufficient facts to survive summary judgment.

### C.

Based on its interpretation of the July 1997 commitment letter, Flagship also asserts a counterclaim for breach of contract. Because we have previously concluded that Minnwest has no duty to perform according to the terms in the letter, Flagship has no cause for relief. Summary judgment was, therefore, correctly ordered by the district court on Flagship's breach-of-contract counterclaim. *See Gunderson v. Alliance of Computer Prof'ls, Inc.*, 628 N.W.2d 173, 182 (Minn.App.2001), *review granted* (Minn. July 24, 2001) *and appeal dismissed* (Minn. Aug. 17, 2001).

### D.

■ Flagship's remaining counterclaim asserts a violation of the covenant of good faith and fair dealing. This covenant ordinarily will be implied between the parties to a contract.[5] *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d at 502. When parties take action with respect to a contract, this covenant bars a party from unjustifiably hindering the other party's performance. *Id.* To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty. *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn.App. 1998). Again, because we have concluded that Minnwest had no contractual duty to perform, the district court did not err in ordering summary judgment on this counterclaim.

### III.

■ Flagship also contends that, following the entry of judgment pursuant to the foreclosure decree, the district court erroneously ordered payment of the construction-loan rate of interest, rather than the postjudgment statutory interest rate, up to the time of the foreclosure sale. The determination of postjudgment interest is a legal issue, which we review de novo. *See C.J. Duffey Paper Co. v. Reger*, 588 N.W.2d 519, 527 (Minn.App.1999).

Because postjudgment interest is controlled by statute, we apply principles of statutory interpretation. The object of statutory interpretation is to give effect to the intention of the legislature. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003). If the meaning of a statute is clear, then it shall be given effect according to its plain language. *Molloy v. Meier*, 679 N.W.2d 711, 723 (Minn.2004). But if a statute is reasonably susceptible of more than one

---

**5.** The implied covenant of good faith and fair dealing does not apply to sales contracts, *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn.App.1998), or to employment contracts, *Lee v. Metro. Airport Comm'n*, 428 N.W.2d 815, 822 (Minn.App. 1988).

meaning, we apply principles of statutory construction to determine the legislature's intent. *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn. 2002).

Postjudgment interest is governed by Minn.Stat. § 549.09, subd. 2 (2002), which provides in relevant part: "During each calendar year, interest shall accrue on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid [at the statutory rate]." If an ordinary debt is reduced to a money judgment, postjudgment interest is computed at the statutory rate, not the contract rate. *Reger*, 588 N.W.2d at 527. The operative question here is whether, in a foreclosure by action, the debt is reduced to a judgment by the foreclosure decree or the foreclosure sale.

▮▮▮▮ In a foreclosure by action, judgments are governed by Minn.Stat. § 581.03 (2002), which provides:

> Judgment shall be entered, under the direction of the court, adjudging the amount due, with costs and disbursements, and the sale of the mortgaged premises, or some part thereof, to satisfy such amount, and directing the sheriff to proceed to sell the same according to the provisions of law relating to the sale of real estate on execution, and to make report to the court.

Statutes involving judgments are *in pari materia* and shall be construed in light of one another. *See Bolstad v. Paul Bunyan Oil Co.*, 215 Minn. 166, 169, 9 N.W.2d 346, 348 (1943). The postjudgment interest statute requires that interest accrue "from the time that [the judgment] is entered," Minn.Stat. § 549.09, subd. 2, and the foreclosure statutes consistently describe the

foreclosure decree as a judgment entered, Minn.Stat. § 581.03. Therefore, in a foreclosure by action, postjudgment interest accrues at the statutory rate from the foreclosure decree, not the foreclosure sale.

Our conclusion is consistent with the analysis of other authorities. According to the historical rule expressed by courts in equity, when a debt is secured by a mortgage, the contract terminates at the foreclosure decree, and interest is thereafter calculated at the statutory rate. *See Beeler v. Am. Trust Co.*, 28 Cal.2d 435, 170 P.2d 439, 442 (1946); *Whitehurst v. Camp*, 699 So.2d 679, 683–84 (Fla.1997); 55 Am. Jur. 2d *Mortgages* § 711 (1996). Although the Minnesota Supreme Court has not expressly adopted this rule, the supreme court has described a foreclosure decree as a final judgment when determining its effect on other proceedings. *Smude v. Amidon*, 214 Minn. 266, 269, 7 N.W.2d 776, 778 (1943) (mechanic's lien); *Fiman v. Hagedorn*, 185 Minn. 582, 585, 242 N.W. 292, 294 (1932) (bankruptcy).

To support its argument that the contract rate applies up to the foreclosure sale, Minnwest relies substantially on Minn.Stat. § 581.10 (2002).[6] This statute, which controls postsale rights of redemption in a foreclosure by action, provides in relevant part:

> The mortgagor ... within the time specified [for postsale redemption], after the date of the order of confirmation, may redeem the premises sold, or any separate portion thereof, by paying the amount bid therefor, with interest thereon from the time of sale at the rate provided to be paid on the mortgage

---

**6.** In its brief, Minnwest cited Minn.Stat. § 580.23, subd. 1 (2002), which relates to foreclosures by advertisement. We note that both Minn.Stat. §§ 580.23 and 581.10 provide identical methods for calculating the amount for postsale redemption for foreclosure by action and foreclosure by advertisement.

debt, not to exceed eight percent per annum....

Because this statute calculates the amount for postsale redemption using the contract rate, Minnwest asserts that the contract rate should also apply to the period from the foreclosure decree to the foreclosure sale.

Of the 23 states that provide a postsale statutory right of redemption, our research discloses eight states that apply the contract rate of interest for the period from the foreclosure sale to the redemption, if such occurs.[7] *See generally* 4 Richard R. Powell, *Powell on Real Property* § 37.46 (2004). Two of these states, Illinois and Maine, have authority that dictates the rate of interest for the period from the foreclosure decree to the foreclosure sale. Both states describe the foreclosure decree as a judgment and, as part of a unitary statutory scheme, require that the contract rate run from the foreclosure decree up to the sale and thereon to postsale redemption, if such occurs. *See* 735 Ill. Comp. Stat. Ann. 5/15–1506, –1603 (West 2003); Me.Rev.Stat. Ann. tit. 14, §§ 6204, 6322 (West 2003). Of the 14 states that apply a postjudgment rate of interest for the period from the foreclosure sale to the redemption,[8] only California has

authority dictating the rate of interest for the period from the foreclosure decree to the foreclosure sale. *See Beeler,* 170 P.2d at 442. The California Supreme Court held in *Beeler* that, unless the mortgage note expressly reserves a contract rate for this period, the statutory rate will run from the foreclosure decree to the foreclosure sale. *Id.*; *cf. Ex parte Aurora Fed. Sav. & Loan Ass'n,* 223 Md. 135, 162 A.2d 739, 741–42 (1960) (adopting a similar rule in a jurisdiction without postsale redemption); *ERHAL Holding Corp. v. Rusin,* 229 A.D.2d 417, 645 N.Y.S.2d 93, 95 (1996) (same).

Based on the foregoing survey, we observe that, in the rare case where a state expressly dictates the rate of interest in a foreclosure proceeding, the same rate typically applies to both the period before and after the foreclosure sale. Two states (Illinois and Maine) have opted for the contract rate, and one state (California) has opted for the statutory rate. But in each of these states, interest is governed throughout by a uniform, unambiguous scheme.

Minnesota's foreclosure statutes fail to supply a comprehensive scheme for the calculation of interest, especially for the period between the foreclosure decree and

7. *See* 735 Ill. Comp. Stat. Ann. 5/15–1603(d)(1)(vi) (West 2003); Iowa Code § 628.13 (2001); Me. Rev. Stat. Ann. tit. 14, § 6204 (West 2003); Mich. Comp. Laws Ann. § 600.3140 (West 2000); Minn. Stat. § 581.10 (2002); Mo. Ann. Stat. § 443.410 (West 2000); N.D. Cent. Code § 28–24–02 (1991); *Heimerdinger v. Heimerdinger,* 299 Mich. 149, 299 N.W. 844, 846 (1941) (holding that contract rate of interest applied at redemption); *Lang v. Bank of Steele,* 415 N.W.2d 787, 791 n. 2 (N.D.1987) (citing N.D. Cent. Code § 28–24–02).

8. *See* Alaska Stat. § 09.35.250 (Michie 2002); Ariz. Rev. Stat. Ann. § 12–1285 (West 2003); Ark. Code Ann. § 18–49–106 (Michie 2003); Cal. Civ. Proc. Code § 729.060(b)(4) (West Supp. 2004); Kan. Stat. Ann. § 60–2414(d) (1994); Ky. Rev. Stat. Ann. § 426.220 (Michie 1992); Mont. Code Ann. § 25–13–802 (2003); N.M. Stat. Ann. § 39–5–18(A)(1) (Michie 1991 & Supp. 2004); Or. Rev. Stat. § 18.582(2) (2003); Tenn. Code Ann. § 66–8–110 (2004); Utah R. Civ. P. 69(j)(3); Wash. Rev. Code Ann. § 6.23.020(2) (West 1995 & Supp. 2005); Wyo. Stat. Ann. § 1–18–103(a) (Michie 2003); *Beavers v. Transamerica Fin. Servs., Inc.,* 474 So.2d 1105, 1107–08 (Ala.1985); *cf. Fed. Land Bank of Wichita v. Burgett,* 97 N.M. 519, 641 P.2d 1066, 1067–68 (1982) (holding that, when calculating interest on amount for right of redemption, no interest is assessed from decree to sale and statutory interest is assessed thereafter).

the foreclosure sale. Absent statutory guidance, we distinguish between the legal obligations imposed by a judgment and the equitable interests served by the postsale rights of redemption. *See* 4 Powell, *supra*, § 37.49. Thus, relying solely on the plain meaning of the relevant statutes affecting judgments, we apply the statutory postjudgment interest rate upon entry of the foreclosure decree. Although Minnwest proposes what may be a more consistent approach to the calculation of interest in foreclosure proceedings, "courts are not free to substitute amendment for construction and thereby supply ... legislative omissions." *Underwood Grain Co. v. Harthun*, 563 N.W.2d 278, 281 (Minn.App. 1997).

Here, the district court applied the contract rate of interest for the period from the foreclosure decree to the foreclosure sale. Because we conclude that the postjudgment statutory rate of interest applies for this period, we reverse this aspect of the district court's ruling and remand with instructions to apply the postjudgment statutory rate of interest from the date of the foreclosure decree.[9]

## DECISION

Because the parties' commitment letter contained a condition precedent that was not satisfied, Minnwest had no contractual duty to provide Flagship with long-term financing. Flagship is otherwise unable to establish a genuine issue of material fact precluding summary judgment on its counterclaims. Accordingly, the district court properly ordered summary judgment for Minnwest. But when Flagship's debts were reduced to a judgment by the foreclosure decree, the district court erroneously applied postjudgment interest at the contract rate, rather than the statutory rate. We affirm in part, reverse in part, and remand to correct the calculation of interest.

**Affirmed in part, reversed in part, and remanded; motion denied.**

---

**9.** Minnwest also moves to "dismiss as moot" Flagship's appeal with respect to the rate of postjudgment interest on an unsecured debt. When Minnwest brought action in foreclosure to recover its debts against Flagship, one debt was not secured by a mortgage. But the district court disposed of all the debts in the foreclosure decree, uniformly ordering judgment with interest at the contract rate. With respect to the unsecured debt, the court administrator entered judgment with interest at the statutory rate, notwithstanding the district court's order. The parties' arguments on appeal have addressed only the postjudgment rate of interest on a debt secured by a mortgage. Our resolution of the matters argued has no effect on postjudgment interest for an unsecured debt. We now conclude that the court administrator correctly entered judgment on the unsecured debt with postjudgment interest at the statutory rate. *See Reger*, 588 N.W.2d at 527. Because we reach this issue on its merits, Minnwest's motion to dismiss as moot is denied.