**MOUNDSVIEW INDEPENDENT SCHOOL DISTRICT NO. 621, Appellant,**

v.

**BUETOW & ASSOCIATES, INC., Respondent,**

**Reco Construction, Inc., Respondent,**

**Central Roofing Company, Respondent.**

No. 46845.

Supreme Court of Minnesota.

May 13, 1977.

Jesse & Cosgrove and Robert J. Healy, Minneapolis, for appellant.

Briggs & Morgan and Philip L. Bruner, St. Paul, for Buetow & Assoc., Inc.

Jardine, Logan & O'Brien, St. Paul, for Reco Const., Inc.

Murnane, Murnane, Conlin & White, St. Paul, for Central Roofing Co.

Heard before TODD, MacLAUGHLIN and STAHLER, JJ., and considered and decided by the court en banc.

TODD, Justice.

Buetow & Associates, Inc. (Buetow) entered into an agreement with Moundsview Independent School District No. 621 (Moundsview) to perform architectural services. Buetow agreed to prepare plans and specifications for an addition to a school as well as to provide general supervision of the construction operation. After the completion of construction, a windstorm ripped a portion of the roof off the school, allegedly due to the failure of a contractor to adequately fasten the roof to the building. The trial court granted Buetow's motion for summary judgment based on Buetow's contract with Moundsview, which provided that Buetow was not responsible for the failure of a contractor to follow the plans and specifications. We affirm.

In August 1968, Moundsview retained Buetow to prepare plans and specifications for an addition to an elementary school. At the time of the execution of the agreement, Moundsview had the option of requiring Buetow to provide (1) no supervision, (2) general supervision, or (3) continuous on-site inspection of the construction project by a full-time project representative referred to as a "clerk of the works." Moundsview elected to have Buetow provide only a general supervisory function, the specific language of the contract enumerating the requirements as follows:

"The Architect *shall make periodic visits to the site to familiarize himself gen-*

*erally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents.* On the basis of his on-site observations as an Architect, *he shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work.* The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, *and he shall not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.*" (Italics supplied.)

The contract further provides:

"The Architect shall not be responsible for the acts or omissions of the Contractor, or any Subcontractors, or any of the Contractor's or Subcontractors' agents or employees, or any other persons performing any of the Work."

Buetow prepared plans and specifications requiring the placement of wooden plates upon the concrete walls of the building. The plates were to be fastened to the walls by attaching washers and nuts to one-half inch studs secured in cement. During the 79-week construction period, the president of Buetow made 90 visits to the construction site in performance of Buetow's general supervisory obligation.

On May 19, 1975, a severe windstorm blew a portion of the roof off the building causing damage to the addition and to other portions of the school. It was discovered that the roof had not been secured by washers and nuts to the south wall of the school as required by the plans and specifications.

Moundsview brought an action for damages caused by the roof mishap against Buetow, the general contractor, and the roofing subcontractor. In response to an interrogatory from Buetow requesting Moundsview to state all facts upon which it

relied to support its allegations against Buetow, Moundsview replied:

"* * * Defendant Buetow failed to properly supervise the roof construction, failed to supervise and discover the missing nuts and studs and take proper corrective action."

Thereafter, Buetow made a motion for summary judgment, basing its motion upon the affidavit of one of its officers which stated that Buetow did not observe during any of its construction site visits that the washers and nuts had not been fastened to the studs on the south wall. The motion was also accompanied by the architect's contract which the parties entered into and Buetow's interrogatories and Moundsview's answers thereto. Moundsview did not file a responsive affidavit to oppose the motion.

The trial court granted Buetow summary judgment, accompanying its decision by a memorandum which states:

"Since the contract of the architect did not require detailed supervision by the architect of the construction project, and since the architect was not contractually liable, as a matter of law, for the acts and omissions of the general contractor or any subcontractor, the architect is entitled to summary judgment under the principle enunciated in *J & J Electric, Inc. v. Moen Company,* 9 Wash.App. 954, 516 P.2d 217 (1973)."

Moundsview appeals from the judgment entered pursuant to the order for summary judgment.

The issue presented for consideration is whether there exists a genuine issue of fact in this case that will preclude the entry of summary judgment dismissing the complaint against Buetow.

1. Initially, we note that the rule in Minnesota is that a party cannot rely upon general statements of fact to oppose a motion for summary judgment. Instead, the nonmoving party must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial. *Borom v. City of St. Paul,* 289 Minn. 371, 184 N.W.2d 595 (1971); Rule 56.05, Rules of Civil Procedure; 2 Hetland

and Adamson, Minnesota Practice, Civil Rules Ann., p. 573.

The general statements included within Moundsview's complaint and the equally general answers to Buetow's interrogatories are insufficient to create a genuine issue of fact to successfully oppose a motion for summary judgment. Thus, since Moundsview failed to present any specific averments of fact in opposition to the motion for summary judgment, our review of the case is limited to a consideration of the contract between the parties.

■ 2. Moundsview argues that Buetow breached its duty of architectural supervision by failing to discover that a contractor had failed to fasten one side of the roof to the building with washers and nuts as required by the plans and specifications. It is the general rule that the employment of an architect is a matter of contract, and consequently, he is responsible for all the duties enumerated within the contract of employment. *Kostohryz v. McGuire*, 298 Minn. 513, 212 N.W.2d 850 (1973); see, generally, 5 Am.Jur.2d, Architects, § 5. An architect, as a professional, is required to perform his services with reasonable care and competence and will be liable in damages for any failure to do so. *Kostohryz v. McGuire, supra*; Cf. *Cowles v. City of Minneapolis*, 128 Minn. 452, 151 N.W. 184 (1915).

■ Thus, consideration of whether Buetow breached a duty of supervision requires an initial examination of the contract between the parties to determine the parameters of its supervisory obligation. The argument that Buetow breached its duty to supervise would be more persuasive had Moundsview contracted for full-time project representation rather than mere general supervision. An architect's duty to inspect and supervise the construction site pursuant to a contract requiring only general supervision is not as broad as its duty when a "clerk of the works" is required. The mere fact that Buetow received additional compensation for performing the general supervisory service does not serve to expand its responsibilities to an extent equivalent to the duties of a full-time project representative. Moundsview cannot be allowed to gain the benefit of the more detailed "clerk-of-the-works" inspection service while in fact contracting and paying for only a general supervisory service.

■ Thus, the question of whether Buetow breached its duty to supervise the construction project is to be determined with reference to the general supervisory obligation enumerated in the contract. The contract provided that the architect " * * * shall not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents." When this section is read in conjunction with the section which provides that "[t]he Architect shall not be responsible for the acts or omissions of the Contractor, or any Subcontractors, or any of the Contractor's or Subcontractors' agents or employees or any other persons performing any of the Work," it is apparent that by the plain language of the contract an architect is exculpated from any liability occasioned by the acts or omissions of a contractor. The language of the contract is unambiguous. The failure of a contractor to follow the plans and specifications caused the roof mishap. By virtue of the aforementioned contractual provisions, Buetow is absolved from any liability, as a matter of law, for a contractor's failure to fasten the roof to the building with washers and nuts.

Thus, based upon the language of the architect's contract, Buetow was entitled to summary judgment. Cf. *Brown v. Gamble Const. Co. Inc.*, 537 S.W.2d 685 (Mo.App. 1976); *J & J Elec. Inc. v. Gilbert H. Moen Co.*, 9 Wash.App. 954, 516 P.2d 217 (1973).

Affirmed.