■ JEWISH BOARD OF GUARDIANS, Respondent, v GRUMMAN ALLIED INDUSTRIES INCORPORATED, Appellant, et al., Defendants. THOMAS J. BIUSO, Third-Party Plaintiff, v AURIGA BUILDING CORPORATION, Third-Party Defendant. JEWISH BOARD OF GUARDIANS, Respondent, v GRUMMAN ALLIED INDUSTRIES INCORPORATED et al., Appellants-Respondents, et al., Defendant. THOMAS J. BIUSO, Third-Party Plaintiff-Appellant-Respondent, v AURIGA BUILDING CORPORATION, Third-Party Defendant-Appellant-Respondent. — Judgment, Supreme Court, New York County (Maresca, J.), entered April 20, 1982 in favor of plaintiff Jewish Board of Guardians against defendants Grumman and Biuso for $206,898.47, plus interest and costs, making a total of $304,344.66, and adjudging that third-party defendant Auriga shall indemnify defendant and third-party plaintiff Biuso, is reversed, on the law, with costs; plaintiff's

complaint against Grumman and Biuso is dismissed; and third-party plaintiff Biuso's claim for indemnification against third-party defendant Auriga and third-party defendant Auriga's claim for indemnification against defendant Grumman are dismissed, as moot. Appeal from order, Supreme Court, New York County (Egeth, J.), entered September 10, 1981, denying motion of defendant Grumman for leave to amend its answers is dismissed, without costs, as moot in view of the foregoing determination on the appeal from the judgment, and as subsumed in said judgment. Plaintiff Jewish Board of Guardians (hereinafter Owner) desired to construct a school building at Hawthorne, New York. The building was to be constructed by using individual modules or modular units which were to be manufactured away from the site and then transported to the site where the units would be placed on concrete foundations, then permanently aligned, and then a permanent roof was to be applied, i.e., "field applied." Defendant Biuso was the architect; third-party defendant Auriga Building Corporation was the general contractor; defendant Grumman Allied Industries Incorporated was the subcontractor charged with the task of manufacturing and delivering the modular units. Grumman manufactured and delivered the modules to the site. But before the aligning of the modules or installation of the permanent roof had begun, there was a severe rainstorm and the modules suffered much damage from water. Thereupon, the owner sued the subcontractor Grumman and the architect Biuso for the damage. The architect claimed over against the general contractor Auriga. The jury rendered a verdict in favor of plaintiff against Biuso and Grumman, finding Grumman to be 90% negligent, Biuso 10% negligent, and Auriga not at all negligent. The parties submitted to the court questions of indemnification. The court held that Biuso was entitled to indemnification from Auriga, but that Auriga was not entitled to indemnification for its liability in turn from Grumman. We hold that neither Grumman nor Biuso is liable to plaintiff for this water damage. While all parties recognized the need for protecting these open modules from the weather, there was a clear and agreed-upon division of function and duty among them. Grumman contracted to manufacture and deliver the modules to the site, protecting them on the way. But, by article 22 of the specifications which formed part of the contracts, Auriga was under the obligation to "provide and install all necessary temporary protection to prevent the intrusion of the elements." In accordance with this division of function and duty, once the modules were delivered, Auriga, the general contractor, removed the wrapping previously placed by Grumman, Auriga's crane lifted the modules and placed them on the foundation, and then Auriga covered them with Visqueen, a plastic protection against elements, wrapping the modules from ground level up along the side of the modules, then along the top over the module, and then down the other side. Once the modules were delivered Grumman neither had nor undertook any duty to protect them from the elements; that was Auriga's obligation. It is claimed that Grumman had a duty to give instructions to the general contractor on how to protect the modules from the elements. But the record is clear that the instructions that Grumman undertook to give were only those relating to erecting and installing the modules, not those relating to protection against the elements. Indeed, the briefs do not make clear what there is so esoteric about wrapping the modules to protect them against the elements so as to require special instructions on this point from the manufacturer to the general contractor. The remaining claims of failure by Grumman to perform fully were clearly shown to have no relation to the damage, e.g., the strips of plywood which were to be supplied by Grumman, could not be put in place in the joints until the modules had been aligned, work on which had not been begun yet; the roofing felt supplied by Grumman was not supposed to be protection against the elements; the failure

to cut the roofing plywood back did not prevent protection against the elements because the general contractor applied wooden blocks, which apparently took care of the problem. As to the claim against the architect Biuso, the architect was not retained to supervise the performance of the job. The contract explicitly provided: "The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he shall not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents." (Owner and architect contract, par 1.1.14.) As we are dismissing plaintiff's claims against the original defendants Grumman and Biuso, it follows that the claim of Biuso for indemnification against Auriga, and Auriga's derivative claim for indemnification from Grumman (with respect to Auriga's indemnification liability to Biuso) must also be dismissed as moot. Defendant Grumman also appeals from an order denying leave to amend its answers to allege an affirmative defense of waiver by the Owner. Although the action is in the name of the Owner, it is in reality a subrogation action prosecuted by and on behalf of the Owner's insurer. Paragraph 11.3.1 of the General Conditions of the contract requires the Owner to maintain property insurance upon the entire work to "include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of Fire, Extended Coverage, Vandalism and Malicious Mischief." (The specifications define extended coverage "to cover loss or damage by storm or hurricane" [5. insurance by owner, a (5)].) The general conditions further provided that any insured loss is to be paid to the Owner as trustee for the insureds (par 11.3.3). And that: "The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph 11.3, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. The Contractor shall require similar waivers by Subcontractors and Sub-subcontractors in accordance with Clause 5.3.1.5" (par 11.3.6). Clause 5.3.1.5 requires similar waivers as between the contractor and the subcontractors. And the specifications provide that: "The Owner, Contractor and all subcontractors waive all rights, each against the other, for damages caused by fire or other perils covered by insurance provided for under the terms of this article, except such rights as they may have to the proceeds of insurance held by the Owner as Trustee." (5. insurance by owner, a [2].) Shortly before the trial defendant Grumman moved to amend its answers to allege as an affirmative defense this waiver as set forth in the general conditions. If defendant Grumman is correct, the waiver presents a question of law which may and fairly should be dispositive of the rights of all the parties, except the architect. The court denied the application for leave to amend on the ground that it was made too late. In view of our decision on the main appeal, the appeal from this determination becomes moot. Concur — Sullivan, J. P., Silverman and Bloom, JJ.

Fein and Alexander, JJ., dissent in a memorandum by Alexander, J., as follows: I would affirm the judgment entered in favor of the plaintiff, Jewish Board of Guardians, against the defendants Grumman and Biuso, as well as the indemnification judgment in favor of third-party plaintiff Biuso against third-party defendant Auriga. I would also affirm the order denying the motion of the defendant Grumman for leave to amend its answer. While, as the majority observes, an agreed-upon division of function and duty among the parties appears from the contract documents, the trial record makes it clear that under the circumstances that prevailed at the job sites, the parties by their conduct, demonstrated that they did not intend to and in fact did not adhere strictly to that division of function and duty set forth in the contract

documents. Moreover, the evidence at trial demonstrates that the over-all circumstances surrounding this construction site, as recognized by the parties, imposed obligations and duties beyond those specified by the literal language of the contracts. Initially, it should be observed that the trial evidence adequately demonstrated, and the jury apparently found, that the specifications prepared by Biuso were inadequate in that they were insufficient in their detail as to the responsibilities that should be imposed upon Auriga, the contractor and Grumman, the manufacturer of the modular units, to insure that the owner Jewish Board of Guardians received that which it was to receive as the completed construction project. Additionally, Biuso was delinquent in the discharge of his supervisory responsibilities. He was present at the construction site on the day that the last of the modular units was delivered. He was charged with the responsibility of determining that the temporary protection placed on those modular units was sufficient to accomplish its purpose and he should have known that the Visqueen sheeting placed over the modular units, anchored only by the one by twos, was insufficient, to afford adequate protection. Thus, he should have at least called the fact of this inadequacy to the attention of Auriga the contractor, Grumman the builder, or both. This he failed to do and that failure was sufficient to cast him in damages. Moreover, there was extensive, unrebutted trial testimony that because the specifications prepared by Biuso called for the field application of the permanent roof, more careful provisions were required to be made for the protection of the modular units on site prior to the application of the permanent roof. The jury may well have found that the specifications were deficient in this regard, and therefore that Biuso was negligent. Indeed, the plaintiff's expert, Ehrenkrantz, testified that the specifications prepared by Biuso were only "minimal". Although the contract specifications provided that the contractor, Auriga, was obligated to provide and install all necessary temporary protection to prevent the intrusion of the elements, the specifications also provided that Grumman had the responsibility to caulk and weatherproof the units. As the manufacturer of and the party having greater knowledge and expertise in the installation of these modular units, which apparently involved a relatively innovative construction concept, Grumman knew or should have known that the temporary alignment of the units, as they were placed on the site, awaiting the installation of the permanent roof, made them particularly vulnerable to damage from the elements, especially at that time of year (November — December) when the weather was extremely harsh. The Grumman executive whose deposition was received at trial, testified that he and Biuso and a representative from Auriga discussed the schedule for delivery of the modular units. It was agreed among them that as quickly as the units were delivered, they would be off-loaded and set on foundations and thereafter immediately joined and weatherproofed with the permanent roof so that the elements would not affect the job. The last of the modular units was delivered and off-loaded on a Friday afternoon; at a time when it was clear that the modular units would be exposed over the weekend, since no additional work was to be done until the following Monday. Under these circumstances, applying the "reasonable man" test to Grumman's conduct, the jury may well have found that Grumman failed in its responsibilities by failing to make sure that Auriga was fully and properly instructed as to those steps necessary not only to properly join the modular units, but also to protect them during the interim, pending their permanent joinder. Grumman's contract imposed upon it the duty to instruct Auriga as to the permanent joining of the modulars. This duty carried with it the obligation to give proper instructions for the protection of the modulars prior to joining them together. When considered with the evidence that the modular units Grumman delivered did not meet the specifi-

cations, as they were required to do, in that one ply of the felt covering for the temporary roof was missing and that the plywood sheeting attached to the felt was not adequately cut back, thereby preventing a flush joinder of the adjacent units, there was an ample basis for finding Grumman negligent. Indeed, contrary to the conclusion reached by the majority, there was evidence before the jury that the failure of Grumman to properly "cut back" the plywood prevented the proper application of the Visqueen used to protect the modular units from the elements. In these circumstances, this court should not disturb the jury's factual determinations based upon contractual interpretations, particularly where the evidence demonstrates that the parties themselves accepted responsibilities beyond those imposed by the literal language of the contracts. The parties reserved questions of indemnification on the various cross claims to the court and Biuso's claim for indemnification against Auriga was allowed, but Auriga was denied indemnification from Grumman on its claim over. This determination was in accordance with the indemnification provisions of the respective contracts and should not be disturbed. Auriga was obligated under paragraph 4.18.1 of the general conditions of the contract: "[t]o indemnify and hold harmless the owner and the Architect * * * *from and against all claims, damages, losses and expenses* * * * arising out of or resulting from the performance of the work * * * (2) caused in whole or in part by any negligent act or omission of the contractor, any subcontractor * * * *regardless of whether or not it is caused in part by a party indemnified hereunder.*" (Emphasis added.) Thus Biuso was entitled to be indemnified for its 10% share of the plaintiff's recovery, even though that liability resulted from Biuso's own negligence (*Levine v Shell Oil Co.,* 28 NY2d 205; *Emery v Depot Constr. Co.,* 53 NY2d 971). As to Auriga's entitlement to indemnification from Grumman however, a totally different clause and circumstance is involved. Grumman, as subcontractor assumed "entire responsibility and liability for any and all damages or injury of any kind arising out of *its* negligence" (and agreed) to "indemnify and save harmless * * * Auriga Building Corporation * * * from and against any and all loss, expense, damage or injury that * * * Auriga Building Corporation may sustain as a result of *any such claim*" (emphasis added). The court correctly found this language to be clear and unambiguous and that it required Grumman to assume responsibility and liability for damage "arising out of *its* negligence." Since Auriga's "loss, expense, damage or injury" was sustained by reason of its contractual obligation to indemnify Biuso and not by reason of Grumman's negligence, Auriga had no valid claim over against Grumman under the language of the indemnity agreement quoted above. Finally, the court did not abuse its discretion in denying Grumman's application, made on the eve of trial, to amend its answer. While leave to amend pleadings should be freely given (CPLR 3025, subd [b]) "[l]eave to amend rests in the sound discretion of the court (*Harriss v Tams,* 258 NY 229, 240)" (*Birdsall v City of New York,* 60 AD2d 522). Here, more than four years had elapsed since Grumman had filed its initial answer, extensive discovery had been conducted and the case was set for trial in August, 1980. This motion to amend was not made until September, 1981, after a trial date of September 15 had been set. Trial Term did not find Grumman's reasons for the extended delay persuasive, and its decision should not be disturbed (cf. *Williams v New York Univ. Hosp.,* 88 AD2d 540).