Gordon T. GOETTE, et al.,

v.

PRESS BAR AND CAFE, INC., et al., Defendants,

Fredric Wemlinger and Associates, Inc., Respondent,

Phillip W. Kellor, Appellant.

Betty K. HABERLE, et al., Appellants,

v.

Phillip W. KELLOR, d.b.a. Kellor Construction, et al., Respondents.

Nos. C2–87–797, C5–87–1054.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Peter E. Hapke, Hart, Bruner, O'Brien & Thornton, Minneapolis, for Fredric Wemlinger and Associates, Inc.

Michael J. Ford, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for Phillip W. Kellor, d.b.a. Kellor Const., et al.

R. Stephen Tillitt, Gislason, Dosland, Hunter & Malecki, Minneapolis, for Betty K. Haberle, et al.

Considered and decided by POPOVICH, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a summary judgment finding no liability on the part of an architect for the partial collapse of a building. We affirm.

## FACTS

Gregory Payne and James Gillespie are the owners of the Press Bar and Cafe, Inc. (Press Bar) in St. Cloud, Minnesota. In 1984, after deciding to do some remodeling, they contacted Fredric Wemlinger to provide architectural services. Wemlinger's initial proposal involved detailed construction drawings and included construction observation with a total fee of approximately $17,000. The plan was scaled back to an oral agreement whereby Wemlinger agreed to provide conceptual drawings and receive an hourly wage. His drawings were based upon his assumption the building walls were constructed of masonry because that was the form of construction of other buildings of the same time period. His estimated fee was $5,000.

The interior work was completed with little problem. In August 1984 work began on the exterior of the buildings. Although Wemlinger submitted the plans to four or five contractors for the purposes of obtaining bids, the owners of the Press Bar chose Phillip Kellor, not included in those contractors, to supervise the work. Kellor was not licensed or bonded. His estimated cost was $115,000 less than the other contractors.

After work began on the exterior, Wemlinger happened to notice that the walls of the building were not the 12 inch masonry walls he had assumed them to be when he initially made his plans. Instead, the building had a brick veneer and a wood frame underneath.

The change in the type of wall necessitated a change in the method of securing the subframing for the new stucco. Wemlinger's new plan called for "through-bolting" and would necessitate removing some of the newly-remodeled ceiling in the interior. Instead, after consulting with the owners, Kellor decided to use "lag bolting" which would not require the removal of the ceiling.

Work continued on the building and Kellor's crew removed eight inches of brick across the entire front of the building (trenching). This "trenching" removed the support of the parapet above. On October 12, 1984, the parapet came crashing down. It destroyed the rented scaffolding, damaged the building, and caused personal injuries to several of the workers. The accident gave rise to at least six lawsuits which were consolidated for trial. Wemlinger's motion for summary judgment on his liability was granted. Kellor, the construction contractor and the Haberles, owners of the damaged scaffolding appeal.

## ISSUE

Were there material issues of fact which preclude summary judgment?

## ANALYSIS

### Standard and Scope of Review

On an appeal from summary judgment the reviewing court must determine if any genuine issues of material fact exist and whether the law was properly applied. *Poplinski v. Gislason*, 397 N.W.2d 412, 413–14 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Feb. 18, 1987). Any doubt as to the existence of an issue of material fact "must be resolved in favor of finding that the fact issue exists." *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). The appellate court will not resolve or decide issues of fact but only determine if there are fact issues to be tried. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

### Deviation from the Plans

The parties agree that the proximate cause of the accident was the trenching which was done across the front of the

building. The trenching removed all support for the parapet, causing it to fall.

Wemlinger admitted that his initial plan was faulty because of an incorrect assumption on his part as to the type of wall. Wemlinger corrected his original plan by changing the type of bolting to be used.

 Kellor admits that in order to save money and not have to redo part of the interior remodeling, he chose to use lag bolting instead of through-bolting specified by Wemlinger. He admitted, by deposition, that Wemlinger's plans did not call for trenching across the front of the building. However, in his deposition, Kellor also indicated that the reason he trenched all the way across was he felt it was the best way to accomplish the bolting plan called for. Wemlinger says the plans called for drilling through the brick to accomplish the bolting. Thus, trenching was clearly a deviation from the architect's plans.

The plans and designs of a professional are not the proximate cause of an injury if the work was not constructed or performed according to the plans. *See Hoehn v. Minnesota Mining & Manufacturing Co.*, 248 Minn. 162, 170, 79 N.W.2d 19, 24 (1956). Kellor's admission that the plan did not call for trenching and his failure to produce some evidence indicating his interpretation of the plans was reasonable leaves no fact issue. In Minnesota a party cannot rely on general statements of fact to oppose a motion for summary judgment. The nonmoving party must demonstrate that specific facts are in existence which create an issue for trial. *Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.*, 253 N.W.2d 836, 838 (Minn. 1977).

### Duty to Supervise or Inspect

 Kellor also claims that whether or not Wemlinger had a duty to inspect or supervise is a question of fact which precludes summary judgment. The employment of an architect is a matter of contract, and the architect is responsible for the duties enumerated in the contract. *Buetow*, 253 N.W.2d at 839. There is no general duty to supervise. Wemlinger admits that he did not supervise or inspect

the project during the work. While the original proposal included supervisory duties at a price of $17,000, the agreed upon plan was for concept designs only, and at a much lower fee, based on hourly service.

In *Buetow*, the school district involved had choice of requiring the architect to provide (1) no supervision, (2) general supervision or (3) continuous inspection. The school district chose general supervision. The roof blew off the school and the cause was something that might only have been discovered by continuous on site inspection. The court held that the school district could not gain the benefit of continuous inspection when it in fact contracted and paid for general supervisory service. *Id.* at 839.

The Press Bar chose to contract for conceptual plans, for less money, rather than the more expensive arrangement which would have provided supervision. The conceptual plans produced by Wemlinger did not include the duty to inspect or supervise.

### DECISION

The contractor deviated from the architect's plans and the architect had no general, noncontractual duty to supervise construction. There are no disputed facts and the law was applied correctly.

Affirmed.