NICOLLET RESTORATION,
INC., Respondent,

v.

The CITY OF ST. PAUL,
Petitioner, Appellant.

No. CX–93–2421.

Supreme Court of Minnesota.

July 7, 1995.

Timothy E. Marx, City Atty., Walter A. Bowser, Asst. City Atty., Philip B. Byrne, Asst. City Atty., St. Paul, for appellant.

Charles A. Cox, III, Cox & Goudy, Minneapolis, for respondent.

## OPINION

PAGE, Justice.

■ This appeal arises out of a lawsuit brought by Nicollet Restoration, Inc. and its president and sole shareholder, John Kerwin (collectively "NRI"), against the City of Saint Paul ("Saint Paul" or "the City") in connection with NRI's efforts to purchase and redevelop Northern States Power Company's (NSP) Island Station power plant (Island Station). Saint Paul Mayor George Latimer and a number of other Saint Paul officials, including James Bellus, the Director of the Department of Planning and Economic Development (PED), were named as individual defendants.[1] NRI's amended complaint asserted detrimental reliance,[2] breach of contract, fraud, negligence, tortious interference, malicious prosecution, willful indifference, and that Saint Paul's condemnation of Island Station was invalid and unenforceable. As a result of the dismissal of some claims by summary judgment and the voluntary dismissal of others, NRI was left with the detrimental reliance, contract, fraud, and negligence claims when Saint Paul moved a second time for summary judgment. In this second motion, Saint Paul argued that it was entitled to summary judgment on all of the remaining claims because: (1) the claims are barred by governmental immunity; and (2) any reliance by NRI on promises allegedly made by Saint Paul government officials to submit and recommend public funding proposals for the project to the Saint Paul City Council was unreasonable as a matter of law. The district court denied this second motion.

■ Saint Paul appealed[3] and the court of appeals affirmed the district court as to the purported cause of action for detrimental reliance, holding that it was not barred by governmental immunity because it sounded in contract. The court of appeals reversed the district court as to the fraud and negligence claims, holding that they were barred by governmental immunity, and did not discuss the contract claims.

On appeal to this court, Saint Paul again contends that NRI's detrimental reliance claim fails as a matter of law because the claim is barred by governmental immunity and because any reliance by NRI was unreasonable. We reverse the court of appeals and hold that Saint Paul was entitled to summary judgment dismissing NRI's pur-

---

**1.** All claims against the individual defendants were subsequently dismissed.

**2.** While the amended complaint purports to assert a cause of action for detrimental reliance, this court has never recognized such a cause of action, and we do not do so now. Rather, detrimental reliance is an essential element of a number of causes of action, including those of promissory estoppel, *AFSCME Councils 6, 14, 65, and 96, AFL–CIO v. Sundquist*, 338 N.W.2d 560, 568–69 (Minn.1983), which sounds in contract, and fraud, *Davis v. Re–Trac Mfg., Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967), which sounds in tort. For purposes of resolving this case, we need not determine whether NRI's purported cause of action for detrimental reliance sounds in contract or tort.

**3.** An order denying a defendant's summary judgment motion based on discretionary act or official immunity is immediately appealable. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn.1991).

ported cause of action for detrimental reliance.[4]

In April 1983, NSP offered to sell Island Station to the City of Saint Paul for redevelopment. The City was not interested in purchasing Island Station, but agreed to help NSP select a developer for it. Saint Paul government officials, including Mayor Latimer and PED Director Bellus, entered into negotiations with NRI's Kerwin as a potential developer. The initial negotiations centered on Saint Paul providing $3.6 million or 30% of the total redevelopment costs in public funds for the project.

During its consideration of the project, the Saint Paul City Council passed a resolution that: (1) gave preliminary approval for the issuance of revenue bonds to assist NRI in financing the project, and (2) authorized the Saint Paul Housing and Redevelopment Authority (HRA)[5] to execute a Memorandum of Understanding with NRI. The City Council's resolution, while not specifying a dollar amount, provided that NRI was "authorized to make * * * expenditures toward payment of that portion of the costs of the Project to be financed from the proceeds of the [revenue] bonds, * * * subject to reimbursement from the proceeds of the Bonds if any * * * but otherwise without any other liability on the part of" Saint Paul. The Memorandum of Understanding executed by the HRA and NRI put NRI on notice that Saint Paul was not required to approve a financing package for the project and that nothing in the memorandum vested in NRI any cause of action against Saint Paul arising from any failure or refusal of Saint Paul to approve the project.

Notwithstanding the City Council's resolution and the Memorandum of Understanding, NRI now seeks to hold Saint Paul liable for damages resulting, not from the City Council's failure to approve a financing package for the project, but from the failure of Latimer and Bellus to submit and recommend certain proposals to the City Council. NRI alleges that, during its negotiations with Bellus, he promised that if NRI agreed to purchase Island Station, he would submit and recommend to the City Council a proposal calling for $3.6 million or 30% of the total redevelopment costs in public funds to assist NRI in the project. NRI also alleges that when it became clear that NRI and Saint Paul would not be able to reach agreement on the amount of public funding for the project, Latimer and Bellus promised that if NRI nevertheless purchased Island Station, they would submit and recommend to the City Council a proposal that Saint Paul either purchase Island Station from NRI or pay for the West Seventh Street Federation to purchase Island Station. Finally, NRI contends that in reliance on these promises, it contracted to purchase, and then did purchase, Island Station from NSP.

■ On appeal from the denial of a motion for summary judgment, we review the record to determine: (1) whether there are any genuine issues of material fact for trial; and (2) whether the trial court erred in its application of the law. See State by Cooper v. French, 460 N.W.2d 2, 4 (Minn.1990); Rico v. State, 472 N.W.2d 100 (Minn.1991) (reviewing denial of summary judgment for error in application of governmental immunity). In doing so, we view the evidence in the light most favorable to the nonmoving party. State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn.1994).

■ A moving party is entitled to summary judgment when there are no facts in the record giving rise to a genuine issue for trial as to the existence of an essential element of the nonmoving party's case. See

4. Our review of the breach of contract allegations contained in NRI's amended complaint leads us to the conclusion that those allegations are identical to the allegations contained in NRI's purported cause of action for detrimental reliance. Thus, Saint Paul is also entitled to dismissal of the breach of contract claims. Neither party sought review of the court of appeals' dismissal of the fraud and negligence claims. Consequently, those two issues are not before us for review.

5. The HRA is an entity created under Minn.Stat. § 462.425 (1949), amended and recodified at Minn.Stat. § 469.003 (1994), to engage in the redevelopment and housing development of Saint Paul. Its governing board is the Saint Paul City Council. Act of April 9, 1976, ch. 234, § 4, 1976 Minn. Laws 864, 865.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 325, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986). Therefore, in responding to a summary judgment motion, "an adverse party may not rest upon the mere averments or denials of the adverse party's pleading but must present specific facts showing that there is a genuine issue for trial." Minn. R.Civ.P. 56.05. *See Bob Useldinger & Sons, Inc. v. Hangsleben,* 505 N.W.2d 323, 328 (Minn.1993); *Moundsview Indep. Sch. Dist. No. 621 v. Buetow & Assoc.,* 253 N.W.2d 836, 838 (Minn.1977). Speculation, general assertions, and promises to produce evidence at trial are not sufficient to create a genuine issue of material fact for trial. *Bob Useldinger & Sons, Inc.,* 505 N.W.2d at 328 (speculation); *Erickson v. General United Life Ins. Co.,* 256 N.W.2d 255, 259 (Minn. 1977) (general assertions); *Borom v. City of St. Paul,* 289 Minn. 371, 374–75, 184 N.W.2d 595, 597 (1971) (promises to produce evidence at trial).

 We first address Saint Paul's argument that NRI's reliance on Latimer's and Bellus' alleged promises was unreasonable as a matter of law. We do so because establishing the reasonableness of the reliance is essential to any cause of action in which detrimental reliance is an element. Whether NRI's purported cause of action sounds in contract or in tort, it can succeed only if NRI's reliance on the alleged promise or misrepresentation was reasonable. *See AFSCME Councils 6, 14, 65 and 96, AFL–CIO v. Sundquist,* 338 N.W.2d 560, 568–69 (Minn.1983) (promissory estoppel); *Davis v. Re–Trac Mfg., Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967) (fraud). If the record reflects a complete failure of proof on this issue, Saint Paul is entitled to summary judgment as a matter of law because that failure "renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. Viewing the evidence before us in the light most favorable to NRI, we conclude

that the record reflects a complete failure of proof on the part of NRI as to the reasonableness of its reliance on Latimer's and Bellus' alleged promises.[6] Minn.R.Civ.P. 56.05.

 Ordinarily, the reasonableness of reliance is a fact question for the jury. *Berg v. Xerxes–Southdale Office Building Co.,* 290 N.W.2d 612, 616 (Minn.1980). Here, however, the record is devoid of any facts which would support a conclusion that NRI's reliance was reasonable. NRI's reliance on the alleged promises would be reasonable if, and only if, Latimer's and/or Bellus' recommendations would have ensured adoption of the proposals by the City Council as recommended. However, the record contains no evidence that the City Council would have adopted NRI's proposals in any form if they had been submitted and recommended by Latimer and/or Bellus. Neither Latimer nor Bellus had any authority to bind the City, and the record clearly shows that even if they had followed through on the alleged promises, there was no guarantee that the City Council would have adopted the proposals. Indeed, the Memorandum of Understanding between NRI and the HRA, and the City Council's resolution authorizing revenue bonds for the project, establish that the City Council was not obligated to approve the project. Thus, the record before us reflects a complete failure of proof on the part of NRI as to the reasonableness of its reliance.

NRI was obligated to present specific admissible facts showing that there was a genuine issue for trial as to the reasonableness of its reliance. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *Bob Useldinger & Sons, Inc.,* 505 N.W.2d at 328; *Moundsview Indep. Sch. Dist. No. 621,* 253 N.W.2d at 838. NRI failed to present such facts. Absent any facts in the record giving rise to a genuine issue for trial on this essential element of NRI's purported cause of action for detri-

6. We are aware that Saint Paul's petition for further review was limited to the issue of the applicability of governmental immunity to the detrimental reliance claim. We believe, however, that the issue of the reasonableness of NRI's reliance is properly before us. Both parties argued the issue before the trial court and fully briefed and argued it to this court. Therefore, in the interest of justice and judicial economy, and pursuant to our authority under Minn.R.Civ. App.P. 103.04, we elect to consider and decide this issue on the merits, making it unnecessary for us to decide whether the trial court erred in its application of governmental immunity.

mental reliance, Saint Paul is entitled to summary judgment.

Reversed.