Billings, Thomas P., J.
This is a negligence action brought by a homeowner, Robert Murray (Murray), against the architectural firm that designed his home, M.Z.O. Architectural Group (MZO). The thrust of Murray’s claim is that MZO was negligent in failing to notify him of defects in construction caused by the building contractor’s deviation from MZO’s designs and specifications. Murray subsequently incurred substantial costs to remedy the construction defects. The matter is currently before the court on MZO’s Motion for Summary Judgment. For the following reasons, the motion is DENIED.
BACKGROUND
On July 20, 2004, Murray and MZO entered into an Agreement for Architectural Services (the Agreement) whereby MZO agreed to provide designs for improvements to Murray’s house located at 82 Evergreen Road in Natick, Massachusetts (the Premises). Under the section of the Agreement titled “BASIC SERVICES” was a subsection titled “Construction Observation Phase (OPTIONAL)” which provided: “[t]he architects shall visit the site as requested by owner and determined by construction schedule to review conformance with design intent and issue a written field report for each visit.” The Agreement contained another section titled “ADDITIONAL SERVICES," which stated “[t]he following services are not included under Basic Services but may be provided upon request at an additional charge . . . Construction observation or consultation.”
Murray never requested or paid for any additional services such has construction observation or consultation. On at least six occasions, however, between July 2004 and April 2005, Murray did request MZO’s presence on the Premises to answer various questions. MZO’s Vice President, John Cronin, Jr. (Cronin), personally visited the Premises on July 23, 2004, August 17, 2004, August 26, 2004, November 24, 2004, February 23, 2005, and April 4, 2005. Murray was billed for each visit at Cronin’s hourly rate, in addition to travel and meal expenses. Murray has alleged that, during this time period, the general contractor responsible for implementing MZO’s designs, John Swanson (the Contractor), made multiple mistakes and deviations from the designs.
In February 2005, Murray contacted Mark Brown (Brown), a licensed home improvement contractor and construction supervisor, to discuss various setbacks the project had suffered. Brown informed Murray of numerous problems in the construction work. Murray then hired Dov Kirsztajn (Kirsztajn), a professional structural consultant, to help identify the various problems. Murray ultimately incurred costs of over $100,000 to correct the problems.
In an email dated June 3, 2005, Cronin asked Murray to pay Kirsztajn’s bill directly, and offered to reduce MZO’s unpaid invoices from $6,466.56 to $4,000, stating “I hope you find this fair and I look forward to hearing back from you. Thank you.” On June 6, 2005, Murray responded by email, saying “I do think that is fair and I will take care of both items ASAP. Thank you.”
Murray brought suit against the Contractor in 2005. On July 21, 2008, Murray filed suit against MZO, alleging that the latter was negligent in failing “to observe, notice, and discover glaring construction defects and deviations from MZO’s design and plans at the Premises, all of which MZO should have discovered and reported to Murray, and all of which caused damage to Murray and the Premises.”
MZO has now moved for summary judgment on the grounds that: (1) the parties’ agreement to reduce the amount of MZO’s bills, as evidenced by the June 2005 emails, represented an accord and satisfaction that bars any future claims against it; and (2) in any event, MZO did not have a duty to inspect the Premises for construction defects or deviations from the architectural designs.
DISCUSSION
A. Standard of Review.
Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating both of these elements. Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). If the moving party has met this burden by presenting evidence in the form of affidavits, testimony, or other evidence, the non-moving party may not defeat the motion by resting on the allegations or denials in its pleadings, but must present specific facts showing that a triable issue of fact exists. Id.
*283 B. Accord and Satisfaction.
The defense of accord and satisfaction may be used to defeat a claim for breach of contract if the defendant demonstrates: (1) an accord or settlement of the disputed claim, and (2) satisfaction, i.e. performance of the settlement agreement. Sherman v. Sidman, 300 Mass. 102, 106 (1938). An accord and satisfaction is not presumed, but rather requires “a clear and definite indication in the agreement that such is the intention of all concerned.” Lipson v. Adelson, 17 Mass.App.Ct. 90, 92-93 (1983). “Whether an accord and satisfaction has been proved is a question of fact on which the defendant has the burden of proof." Wong v. Paisner, 14 Mass.App.Ct. 923, 924 (1982).
Here, the only evidence of accord and satisfaction is the two emails pertaining to the outstanding fees Murray owed to MZO. The meaning of these emails, however, is not self-evident. They could simply represent an effort to resolve an issue between the parties on the amounts owed for MZO’s services. In the alternative, they could constitute an agreement whereby MZO would give Murray a discount for its services in settlement of any claim Murray might have against it for failure to detect the contractor’s mistakes. The actual import of these emails is a question of fact.
C. Architect’s Duly of Care.
An architect may be held liable for damages resulting from the architect’s faulty designs. See Aldrich v. ADD, Inc., 437 Mass. 213, 222-23 (2002). No Massachusetts court, however, has yet decided whether an architect may be held liable for damages resulting from the contractor’s substantial deviations from the project designs, where the architect knew or should have known of such deviations and failed to notify the owner. Among the several states that have addressed this issue, the consensus appears to be that, in general, architects are not guarantors of construction work done by contractors. See Watson, Watson, Rutland/Architects, Inc. v. Montgomery County Bd. of Educ., 559 So.2d 168, 171-72 (Ala. 1990). Architects have no duty to supervise construction unless they expressly agree to do so. Brown v. Gamble Const. Co., Inc., 537 S.W.2d 685, 687 (Mo. 1976). Indeed, the duties of the architect are limited to those enumerated in the contract between himself and the owner; coupled with the general duty to perform his obligations with the care and competence a reasonable architect would use. Moundsview Ind. Sch. Dist. No. 621 v. Buetow & Assoc., 253 N.W.2d 836, 839 (Minn. 1977). The mere fact that the architect receives additional compensation for performing general supervisory services does not mean that his responsibilities are expanded to an extent equivalent to the duties of a full-time project representative. Id.
Nevertheless, even where the contractual duty to inspect is of only a very general or limited nature, an architect does have a duty to notify the owner of known defects in the construction. Watson, 559 So.2d at 173. An architect may not close his eyes on the construction site and then disclaim liability for construction defects that even the most perfunctory monitoring would have prevented. Id.
Here, there is no dispute that MZO offered the service of construction observation or consultation, which would have involved more regular and in-depth inspections of the construction process, and that Murray declined to purchase this service. It is also the case, however, that Cronin made six visits to the Premises between July 2004 and April 2005, at Murray’s request. Murray was billed for these visits. Thus, it would appear that Murray availed himself of the optional construction observation service, at some level at least. Cronin disputes this claim, but its resolution is a determination of fact for the jury. Similarly, whether Cronin observed substantial deviations from the architectural designs when he made those visits is also a question of fact, as is the issue of whether the construction defects were so glaring that they would have been apparent upon even the most perfunctoiy examination. [1]
ORDER
For the foregoing reasons, MZO’s Motion for Summary Judgment is DENIED.

On this latter point, the finder of fact would benefit from the opinion of an expert witness. “As was pointed out in Moundsview, an architect is a ‘professional,’ and we are of the opinion that expert testimony was needed in order to show whether the defects here should have been obvious to the Architect during the weekly inspections.” Watson, 559 So.2d at 173.